*328
 
 Pearson, J.
 

 Upon the first question, it is clear, that the administrator of Mrs. Harris is entitled to the horses, sheep, &c. It is the duty of the executors to make the selection. A confidence is reposed in them, that they will seleet good articles of the several descriptions of chattels. The administrator is entitled to “two
 
 choice
 
 horses,” by which is meant, two of the best horses, and to fifteen of the best sheep.
 

 Upon the second question, assuming as we must do, that the three negroes were given to Mrs. Gillis by a valid
 
 deed of gift,
 
 we think these three negroes are a satisfaction of the legacy of the three small negroes. If no other words had been added, this would have been the conclusion ; for, gifts and bequests to children are considered as portions or provisions made for them, and the law will not allow of a double portion to one child, unless there be a clear intent to give it; but in this will the matter is put beyond all question by the words, “three small negroes
 
 more
 
 which will make her number
 
 seven, equal
 
 with her brothers’ number” — the will having mentioned before, that she had already received
 
 four.
 
 Here the reason for giving
 
 the three
 
 small negroes is expressly stated. That reason ceased by the gift of the three negroes made afterwards and, as the reason ceased, the gift was satisfied, upon the same good.sense with the maxim
 
 “cessanti ratione cessat lex.”
 

 Upon the third question, without putting any stress on the fact, that Lawson is spoken of in the will as being
 
 alive,
 
 which we presume is to be attributed to the fact, that the will has two dates, being dated at the commencement 10th of May, 1842, and at the end, 1st of June, 1842; we are forced to the conclusion by the cases decided in this State and in England, and in our sister States, that the word “heirs,” as used in this will, means the children of Lawson Harris, and that the division must be
 
 per capita,
 
 in which each of the children of Lawson will take
 
 *329
 
 one full share. This is fully settled by the case of
 
 Ward
 
 v.
 
 Stowe, 2
 
 Dev. Eq. 509, when it was last before this Court, and when all the cases were fully examined and discussed. The history of that case shows the importance of abiding by the rule,
 
 stare decisis,
 
 and as it was so solemnly decided, we should follow it, even if disposed to question its correctness ; in which, however, we entirely concur. To take this case out of the general rule, our attention was called by the counsel for the plaintiff to the fact, that in another clause two negrees are given to the “heirs” of Lawson, where it is insisted the children take as a class. This suggestion does not aid the plaintiff. It is certain, that in that clause, the word “heirs” does mean children, and the division'&efween
 
 them
 
 will be
 
 per capita.
 

 The main reliance, however, was put upon the cases of
 
 Spivey
 
 v.
 
 Spivey,
 
 2 Ire. Eq. 100, and
 
 Martin v. Gould, 2
 
 Dev. Eq. 305. We have examined these cases attentively. They do not enable us to say that this case is an exception to the general rule. In the case of
 
 Spivey
 
 v.
 
 Spivey,
 
 the words, “those who have received a part of my estate, will account to the balance of my children for what they have received,” were held sufficient to make that case an exceptionfor, although the word “heirs” was held to mean children, yet as they were expressly required to
 
 account
 
 for advancements made to their mother, as a-
 
 class,
 
 it was held, that they should also
 
 receive
 
 asa
 
 class.
 
 There are no words of the kind in the case under consideration.
 

 In the case of
 
 Martin v. Gould,
 
 the provision, which gave out of the fund, before the division, the
 
 average
 
 price of 100 acres to Daniel, the son, “in order to make him
 
 compensation
 
 for 100 acres which I gave to my son Mali-chi,” was held to make that case an exception ; for it showed that the testator meant to deal equally between his two sons.
 

 
 *330
 
 In this case, it does not appear
 
 from the will,
 
 that the testator meant to
 
 deal equally
 
 between all of his children, but to make such a disposition of his property as he thought right without reference to a precise equality.
 

 William and Lawson are made equal in land by adding $53. Robert has no land until the death of his mother, when he is to get the “home place,” 600 acres. No re* ference is made to equality in land with William and Lawson — no
 
 average price is
 
 to be fixed on.
 

 Sarah Gillis is given a tract of 150 acres of land — no reference to value, so as to show that equality is intended,.
 

 William and Robert Harris, and Sarah Gillis each receive
 
 seven negroes
 
 — the number is equal — nothing is said about value.
 

 And the children of Lawson receive
 
 two negroes.
 
 No mention is made of any negroes having been given to Lawson. Nor is it said, that the
 
 two
 
 negroes are to make the
 
 share
 
 of Lawson equal. So it would not appear that equality was intended, even if we could go out of the will to take notice of the fact, that five negroes had been given, to Lawson ; which could not be done without violating the rules of evidence, that written instruments are not to be added to, varied, or explained, by parol testimony.
 

 We, therefore, can see nothing to take this case out of the general rule, and we do not feel at liberty to depart from a series of cases “to be traced back for more than a century,” for the purpose of speculating upon what
 
 might
 
 have been the intention of the testator.
 

 Per Curiam.
 

 Declared accordingly.