W. B. SIMMONS v. W. L. GROOM.

(Filed 18 November, 1914.)

1. Reference—Findings of Fact—Evidence—Confirmation of Court—Appeal
    and Error.
       The findings of fact by the referee made upon adequate and responsive
    evidence, and concurred in by the trial judge, are not open to review on
    appeal.

2. Contracts, Written—Interpretation—Intent.
       The intent of the parties to a written contract, as gathered from the
    wording of the entire instrument, should govern in its interpretation, giv-
    ing to the words employed their ordinary meaning except where the con-
    text or admissible evidence shows that another meaning was intended; and
    in proper instances resort may be had to the subject-matter when the
    ordinary meaning of the written words would lead to an absurd result,
    and also to the condition of the parties to the contract, so that the courts
    may avail themselves of the same light in its construction as the parties
    were in when they made it.

3. Same—Timber Deeds—Ultimate Payment—Time for Cutting—Reasonable
    Time—Appeal and Error—Premature Appeal.
       Where a written contract for the sale of standing timber definitely pro-
    vides for the payment of a stated sum as a balance due thereon, with
    further provision that the purchaser may pay for the timber by removing
    it from the lands at a certain rate per thousand, rendering a monthly
    account at certain times, and that he shall "cut the timber as a whole
    within the time mentioned in the timber deeds (purchased by him), and
    as much sooner as he reasonably can, by correct interpretation the method
    of payment by cutting and removing the timber was given for the benefit
    of the purchaser, requiring that he be reasonably diligent in order to
    avail himself thereof; and where he has been neglectful of his opportu-
    nity by failing for long periods of time to cut and remove the timber, per-
    mitting, in some instances, the time to expire within which his vendor
    was given to cut in his timber deeds; and the ultimate obligation of the
    purchaser to pay the balance of the purchase price being absolute, it is
    not open to him, in the vendor's action to recover the balance of the pur-

chase price, to successfully maintain the position that the contract permitted him the full time specified in the timber deeds in which to cut the timber and make the required payment, and that the action, having been brought within that time, was premature and should be dismissed. *Hardison v. Lumber Co.*, 136 N. C., 173, cited and distinguished.

**4. Same—Liens—Counterclaim.**

The defendant in this action to recover against him a balance due on the purchase price of timber growing on the plaintiff's lands, having failed to make payment thereon, or to avail himself of a provision of payment allowed to him whereby he was permitted to remove the timber and make partial payments thereon from time to time, etc., is permitted to recover, as a counterclaim, certain sums of money he has paid to judgment creditors of the plaintiff, which constituted an encumbrance on the timber rights conveyed to him.

APPEAL by defendant from *O. H. Allen, J.*, at February Term, 1914, of NEW HANOVER.

Civil action to recover on a contract, heard on exceptions to report of referee.

The plaintiff complained and offered evidence tending to show that in 1908 plaintiff was the owner of certain lands, timber contracts, sawmill, dry-kiln, planing mill, and other property, and defendant offered to buy the same at the price of $19,500, which offer plaintiff accepted. Defendant having paid off as part of the contract price, towit, the sum of $8,714.65, the same being certain charges existent on the property and debts due from plaintiff, the parties subsequently met together at Rocky Mount, on 17 December, 1908, and entered into a written contract as embodying the executed· and executory features of the agreement in terms as follows:

NORTH CAROLINA—Nash County.

Know all men by these presents, That I, W. L. Groom, for and in consideration of certain timber and land deeds and two bills of sale, do agree to pay W. B. Simmons, his heirs or assigns, $10,785.35, same to be paid as follows: It being understood that what I have paid heretofore is payment in full for mills, land, etc., and 4,500,000 feet of timber, by scale Doyle's rule, and for all logs cut after said amount above is cut I am to pay at the rate of $3 per thousand feet for from the 1st to the 10th day of each month for such Doyle's log scale as cut during the preceding month, until the above amount is settled for, or, in other words, until I have cut enough logs, after having cut the 4,500,000 feet, to amount to $10,785.35 at a rate of $3 per thousand feet, it being understood that I am to cut said timber as a whole within the time mentioned in said timber deeds, as much sooner as I reasonably can; it being further understood that all logs are to be scaled by the mill operator or such man as he may designate, and the amount of same rendered to W. B.

Simmons. Now, in the event said W. B. Simmons is not satisfied with scale, another scaler can be secured by mill operator and said W. B. Simmons, jointly, each paying one-half of cost of said scaler, and said scaler is to certify to his account once each month. It is further understood and agreed that all timber is to be cut reasonably saving. This agreement is to bind my heirs and assigns.

In witness whereof I do, this 17th day of December, 1908, fix my hand and seal.                                    W. L. GROOM. [SEAL]

That the timber interest disposed of in this agreement consisted of contract rights to cut timber on specified tracts of land held at that time by the vendor and expiring at different times, towit, in 1912, 1913, 1916, 1918. That in reference to performance or failure to perform the stipulations of the contract, the referee, Mr. E. S. Martin, finds, and there is testimony in the record to support the finding:

"Fifth. That the defendant promised plaintiff that he would enter upon the cutting of the timber at once, and he did so for some time and sent his men for that purpose a little before Christmas, 1908, or first of year 1909.

"Sixth. That the defendant ran the mill for four or five months, and shut down in May, 1909, and stopped cutting timber, and the mill remained idle for about six months and no timber cut, when plaintiff wrote him to continue cutting, to which defendant made no reply. Defendants started up again in January, 1910; ran about six months, stopped again, and shut down the mill and stopped cutting timber for some twelve months; started up in March, 1911, and ran until the mill was burnt in May, 1911, and defendant from that time ceased operating and cutting timber and the mill has never been rebuilt, but he has operated other mills at other places which he owned. That the frequent stops were occasioned by lack of funds, labor troubles, and attachments for debts.

"Seventh. That at the time said timber contracts and property were sold and said contract was made, towit, 17 December, 1908, there were at least 10,000,000 feet of standing timber upon said land conveyed by the plaintiff to the defendant.

"Eighth. That no guarantee or representation was made by the plaintiff as to the quantity of timber standing upon said tracts of land sold by him to defendant, but defendant relied entirely upon his own examination and judgment as an expert, and I so find him to be, as to the quantity of timber thereon. That the contract made by the defendant with the plaintiff, hereinbefore set forth, was not based upon any condition as to the quantity of timber on said land bought as aforesaid.

"Ninth. That on or about 15 November, 1909, the defendant sold and conveyed all of the lands, timber contracts, mill and other property conveyed to him by the plaintiff to the Duck Lumber Company, a corporation which he had formed and incorporated about that time and in which he held considerably a majority of the stock; that he became the president of said company and managed and controlled the same.

"Tenth. That the capacity of the mill sold to defendant was about 3,500,000 feet per year, and the mill could easily cut that amount per year, and between the date of the contract and 17 March, 1912, the mill, if run with reasonable regularity, could easily have manufactured all the timber standing on said lands, 10,000,000 feet or more, into lumber, and, in fact, it was calculated by defendant that it could be done in three years from the date of the contract; whereas, during the whole period existing from the beginning of the contract to the present time, there has been cut and manufactured only 2,982,076 feet.

"Eleventh. That the mill was not run constantly or with any degree of regularity, or timber cut as reasonably as could have been done to execute the contract. There was a great waste in the cutting, and much timber was left in the woods which could have been and should have been sawed up, and some of it stayed out so long that there was nothing left, as timber is damaged in less than thirty days after being cut, by exposure to the weather.

"Twelfth. That the timber contract, Exhibit J-2, expired 24 December, 1910, before this action was brought, and Exhibits D and E expired 20 and 21 November, 1912, Exhibit J, 5 February, 1913, and the contracts, Exhibits F, H, K, and L, will expire in 1916 and 1918, and Exhibits E-1, G, and N are deeds for said lands—all of which was known to the defendant.

"Thirteenth. That the defendant has not paid any part whatever of the $10,785.35 mentioned in said contract, though demanded, but the whole of said amount, with interest thereon from 25 September, 1910, remains due and unpaid, if certain amounts found due to defendant as fixed in the counterclaim hereinafter mentioned are excepted which should be credited thereon.

"Fourteenth. That the defendant did not at any time render to the plaintiff a statement of the logs scaled, as provided in said contract, or in any manner inform him of the same."

The referee further finds on a counterclaim entered by defendant that, in addition to the first payments made by him, the defendant had paid off judgments constituting a lien on the realty to the amount of $336.05, and, upon these findings, held as a conclusion of law that the balance of the purchase price, less the counterclaim, was due and owing from defendant, and that plaintiff was entitled to judgment for such sum.

On the hearing, all of defendant's exceptions were overruled and the report confirmed as to findings of fact and conclusions of law, and, judgment having been so entered, defendant excepted and appealed.

*L. Clayton Grant and John D. Bellamy for plaintiff.*
*Iredell Meares for defendant.*

HOKE, J. There is evidence in the record tending to support the findings of fact by the referee, and this being true, and these findings having been concurred in by the judge, they are not open to further review by this Court, and being adequate and fully responsive, must be considered as representing the facts on which the rights of these parties must be determined. *McCullers v. Chambers,* 163 N. C., 61; *Henderson v. McLain,* 146 N. C., 329.

As to the conclusions of law embodied in the report of the referee, it is contended by the defendant, and his exceptions are framed and designed chiefly to present the position, that in the contract declared on the defendant is only required to pay for logs cut as he cuts them, and that he is allowed the entire time contained in the timber contracts bought by him in which to cut the amount necessary to meet the sum stipulated for in the contract, and that not having cut this amount when the suit was commenced, the action was begun prematurely, and that on the facts as found defendant now owes plaintiff nothing, and the action should be dismissed.

In *R. R. v. R. R.,* 147 N. C., 382, in speaking to certain rules of interpretation applicable to these written contracts which are sufficiently ambiguous to permit of construction, the Court said: "It is well recognized that the object of all rules of interpretation is to arrive at the intention of the parties as expressed in the contract, and that in written contracts which permit of construction this intent is to be gathered from a perusal of the entire instrument. In Paige on Contracts, sec. 1112, we find it stated: 'Since the object of construction is to ascertain the intent of the parties, the contract must be considered as an entirety. The problem is not what the separate parts mean, but what the contract means when considered as a whole.' And while in arriving at this intent words are *prima facie* to be given their ordinary meaning, this rule does not obtain when the 'context or admissible evidence shows that another meaning was intended.' Paige, sec. 1105. And further, in section 1106, it is said that the context and subject-matter may affect the meaning of the words of a contract, especially if in connection with the subject-matter the ordinary meaning of the term would give an absurd result. Again, as said by *Woods, J.,* in *Merriam v. United States,* 107 U. S., 441, 'In such contracts it is a fundamental rule of construction that the courts may look to not only the language employed,

but to the subject-matter and surrounding circumstances, and may avail themselves of the same light which the parties possessed when the contract was made.' And in Beach on Modern Law Contracts, sec. 702, the author says: 'To ascertain the intention, regard must be had to the nature of the instrument itself, the condition of the parties executing it, and the objects they had in view. The words employed, if capable of more than one meaning, are to be given that meaning which it is apparent the parties intended them to have.'"

Applying the principles contained in these citations, it appears from the findings of fact in the referee's report that this was a sale of property by plaintiff to defendant at the contract price of $19,500, entered into in 1908, and that there remains due the sum of $10,785.35, which is to be in any event ultimately paid by defendant, save and except a small counterclaim of $336.05, being the amount paid to relieve some of the property from a judgment lien; that the written contract, after stipulating for the payment of this sum of $10,785.35, provided that the defendant might pay for same by removing timber from the land at the rate of $3 per thousand, rendering an account from the 1st to the 10th of each month, and "it being understood that I am to cut the timber as a whole within the time mentioned in the timber deeds, and as much sooner as I reasonably can"; that notwithstanding this stipulation for reasonable diligence, and the fact that there was ample timber on the ground and that sufficient time had elapsed to enable the defendant to have cut the timber and paid off the entire debt, the methods of defendant have been so lax and dilatory that, in the three years and over from the signing of the contract to the institution of the suit the defendant has only cut 2,982,076 feet of the 4,500,000 he himself was to have before commencing payment; that the mill having burned, he has made no effort to procure another, and has transferred his holdings to a corporation organized by him, known as the Duck Lumber Company; that he has permitted at least three of the timber contracts to become forfeited by lapse of time and has made no payment on the amount except the small counterclaim of $336.05, paid in satisfying a judgment lien, as stated.

From these, the facts and attendant circumstances, having due regard to the nature and history of the transaction and the design and controlling purpose of the agreement as well as its language, we concur in the view of the referee, that this contract did not contemplate that the defendant should in any event have the entire time stipulated for in these timber deeds to cut and pay off this obligation, but that he was to proceed and cut the timber with reasonable diligence; that the ultimate obligation to pay being absolute, this was a method of payment provided by the contract for defendant's benefit, and, it appearing that

he has utterly failed to comply with the stipulation, its terms may no longer avail him, and, by correct interpretation of the contract, his obligation to pay has become absolute.

We were referred by counsel to the case of *Hardison v. Lumber Co.,* 136 N. C., 173, for the proposition that one having a contract conferring the right to cut timber on another's land for a stated period is not required to cut continuously, and the case so holds; but this was construing an ordinary timber contract as between the parties thereto, and does not apply where, as here, one holding such a deed has conveyed the same under a contract binding the grantee to proceed with diligence and has absolutely failed to comply with the stipulation.

On careful perusal of the record, we find no error which gives defendant any just ground of complaint, and the judgment in plaintiff's favor is

Affirmed.