IN THE MATTER OF: FORECLOSURE OF A DEED OF TRUST EXECUTED BY SUTTON INVESTMENTS, INC. DATED NOVEMBER 9, 1976, AND RECORDED IN DEED OF TRUST BOOK 1188, PAGE 213, IN THE OFFICE OF THE REGISTER OF DEEDS OF FORSYTH COUNTY, NORTH CAROLINA, BY BARDEN W. COOKE, SUBSTITUTE TRUSTEE

No. 7921SC535

(Filed 20 May 1980)

1. **Mortgages and Deeds of Trusts § 19.1— default in payment on note—acceleration of debt—no notice of default required**

Language in a note and deed of trust by which respondent mortgagor obligated itself provided that there was a right of acceleration and foreclosure upon the failure of the mortgagor to pay principal, interest, taxes, charges and assessments within thirty days from the date due without regard to notice, but there was no such right upon the failure of the mortgagor to comply with the provisions requiring it to maintain insurance or to comply with the other covenants and agreements between the parties unless written notice was given and thirty days had elapsed since the giving of the notice; therefore, the

In re Foreclosure of Sutton Investments

mortgagee had no duty to give written notice to the mortgagor of default in the payment of the annual installments of principal and interest, and the mortgagee's acceleration of the debt and the trustee's commencement of foreclosure proceedings after the mortgagor's failure to pay the amount due on its annual installment within thirty days of its due date were fully authorized under the parties' agreement.

2. **Mortgages and Deeds of Trust §§ 19.1, 25— acceleration of debt—good faith irrelevant—exercise of power of sale upon default in payments proper**

There was no merit to mortgagor's contention that, pursuant to G.S. 25-1-208, mortgagee's lack of good faith in its decision to accelerate the debt precluded it from exercising the power of sale contained in the deed of trust since the statute relied upon by mortgagor imposes a good faith requirement upon the exercise of a secured creditor's option to accelerate "at will" or "when he deems himself insecure," but the right of acceleration upon which mortgagee's rights depended in the present case was conditioned upon the occurrence of an event within the complete control of the debtor, *i.e.*, compliance with the terms and conditions contained in the note and deed of trust.

3. **Mortgages and Deeds of Trust § 25; Jury § 1— foreclosure under power of sale—no right to jury trial**

No trial by jury is required in hearings conducted under G.S. 45-21.16, since that statute was intended by the legislature to meet minimum due process requirements, not to engraft upon the procedure for foreclosure under a power of sale all the requirements of a formal civil action; the statute refers to appeal "to the *judge* of the . . . court having jurisdiction"; and the right to trial by jury applies only to cases in which the prerogative existed at common law or was granted by statute at the time the N. C. Constitution was adopted, and forclosure by power of sale does not fall into that category.

APPEAL by respondent Sutton Investments, Inc. from *Washington, Judge.* Order entered 6 March 1979 in Superior Court, FORSYTH County. Heard in the Court of Appeals 15 January 1980.

This is an appeal by the mortgagor from an order of the superior court entered after hearings held pursuant to G.S. 45-21.16 authorizing foreclosure of a deed of trust.

In November 1976 Richardson Corporation of Greensboro (Richardson) sold and conveyed a shopping center in Winston-Salem to Sutton Investments, Inc. (Sutton) for the price of $3,800,000.00. Sutton paid $1,150,000.00 in cash, assumed existing deeds of trust totaling $1,650,000.00, and executed its purchase money note secured by a deed of trust on the property for the $1,000,000.00 balance. The principal of the note was payable in five annual installments of $100,000.00 each commencing 10

November 1977 and thereafter in three annual installments of $166,666.66 each. Interest on unpaid principal balances at rates set forth in the note was payable annually on principal payment dates. The note provided that it could be prepaid in whole or in part at any time without penalty.

Sutton paid, albeit late, the first annual installment of principal and interest which became due 10 November 1977. In April 1978 Sutton proposed that it make monthly prepayments on the annual amount to become due in 1978. After some initial disagreement between Richardson and Sutton as to the computation of the proper monthly amount and amount of percentage rents due to Richardson from shopping center tenants for the period prior to Sutton's taking title, Richardson accepted monthly prepayments on the note from Sutton, applying these prepayments first to interest and then to principal. As of 10 November 1978, the due date for payment of the second annual installment of principal and interest, there remained an unpaid balance on that installment of $40,082.22 on principal and $1,519.05 on interest, making a total then due of $41,601.27. By letter dated 6 November 1978 Richardson notified Sutton of these amounts to become due 10 November 1978. No payment was made on that date. On 4 December and on 7 December 1978 Sutton tendered and Richardson accepted two checks in the amount of $11,827.00 each, leaving an unpaid balance of $17,947.27 still owed by Sutton on the annual installment which had become due 10 November 1978. This balance still being unpaid thirty days after it had become due, Richardson declared the entire balance of the purchase money note immediately due and payable in full and called on the substitute trustee in the deed of trust to foreclose. The provisions in the note and deed of trust giving the holder of the note the right to accelerate payment in event of default will be set forth in the opinion.

On 12 December 1978 the substitute trustee filed with the clerk of superior court in Forsyth County a petition for hearing prior to foreclosure sale and served on Sutton notice of hearing as required by G.S. 45-21.16. On 16 December 1978, four days after the substitute trustee filed his petition for hearing with the clerk of superior court, Richardson received by mail Sutton's check in the amount of $17,947.27, which check was refused by Richardson.

On 8 January 1979 a hearing was held before the assistant clerk of superior court in Forsyth County pursuant to the notice of hearing filed by the substitute trustee. The clerk entered an order that date finding that the substitute trustee was entitled to proceed with foreclosure under the terms of the deed of trust.

On appeal by respondent Sutton for hearing de novo before the judge of superior court in Forsyth County, respondent requested and was denied a trial by jury. On 6 March 1979 Judge Washington, the superior court judge before whom the de novo hearing was held, entered an order in which, based upon findings of fact, the court concluded as a matter of law that the note executed by Sutton in November 1976 evidenced a valid debt, that Richardson was and is the holder of the note, that default had occurred, and that acceleration of the debt and exercise of the power of sale were authorized under the terms of the note and the deed of trust. From the order adjudging that the substitute trustee could proceed with foreclosure under the deed of trust, Sutton appeals.

*Adams, Kleemeier, Hagan, Hannah & Fouts by M. Jay DeVaney and Bruce H. Connors for Richardson, petitioner appellee.*

*Smith, Moore, Smith, Schell & Hunter by J. Donald Cowan, Jr. and William L. Young for Sutton, respondent appellant.*

PARKER, Judge.

On this appeal respondent does not dispute either that the Note and the Deed of Trust are genuine or that the $17,947.27 balance due on the second annual installment on the note was not tendered until more than thirty days after 10 November 1978, the date on which the annual installment was due. Rather, relying upon the language of the Note and Deed of Trust, respondent contends that the judge erred in determining that petitioners were entitled to foreclose under the terms and conditions contained in the Deed of Trust.

The Deed of Trust and the Note both bear date 9 November 1976, and each instrument refers specifically to the other. There is no question that the Deed of Trust was executed to secure payment of the $1,000,000.00 balance of purchase price owed to

Richardson and evidenced by the Note. The pertinent provisions of the Note with respect to default and the holder's option to accelerate read:

> In the event of: (1) failure to pay any interest or any installment of principal, or any portion of either, or any other sums required to be paid by this Note and the Deed of Trust of even date herewith, within thirty (30) days after the same become due and payable; or (2) failure to perform and comply with any and all of the *other* covenants, terms and provisions of this Note and/or the Deed of Trust of even date herewith and the continuance of such default (i.e. any default other than the payment of principal and interest, or any portion of either) for a period of thirty (30) days after receipt of written notice thereof, then in any of said events said principal sum and all advancements made pursuant to the provisions of said Deed of Trust, together with all unpaid interest, shall be at once due and payable at the option of the holder hereof, its successors or assigns, and be collectible without further notice. (Emphasis added.)

The Deed of Trust provides that the debt may be accelerated and the power of sale exercised by the trustee as follows:

> [I]f the party of the first part [Sutton] fails to make any payment required in the Note hereby secured or of the interest on same, or of any part of either, or of any taxes, charges and assessments within thirty (30) days after the same shall become due and payable, or if default be made with reference to procuring, paying for, assigning and keeping in force policies of insurance as herein provided, or if default be made in the due fulfillment of the covenants and agreements or any of them herein contained, and such default shall continue for thirty (30) days after receipt of written notice from the party of the third part (Richardson) to the party of the first part (Sutton) . . . .

The parties are in agreement that the Deed of Trust and the Note are consistent in specifying the omissions which constitute default. They are further in agreement that such default is the first precondition to acceleration of the debt and exercise of the power of sale. The dispute arises as to the second precondition, that is, the time period for which the omission or default must

continue before the mortgagee's power to accelerate the debt and the trustee's power to sell the encumbered property arise.

[1] Respondent contends that before the holder of the Note may accelerate the debt and the Trustee may exercise his power of sale pursuant to the terms of the Deed of Trust, the mortgagor's omission to perform any duty must continue for a period of thirty days *after receipt of written notice thereof.* Thus, because the mortgagee, Richardson, at no time gave written notice to Sutton of its default in payment of principal and interest due on the 1978 annual installment, respondent contends that Richardson had no power to accelerate the debt or to order the substitute trustee to exercise the power of sale under the Deed of Trust, and that the judge erred in finding that petitioner-mortgagee was entitled to proceed with foreclosure. We do not agree.

It is well settled that a power of sale contained in a deed of trust must be exercised in strict conformity with the terms of the instrument. *Brown v. Jennings,* 188 N.C. 155, 124 S.E. 150 (1924); *Ferebee v. Sawyer,* 167 N.C. 199, 83 S.E. 17 (1914). Such powers of sale are contractual, *Eubanks v. Becton,* 158 N.C. 230, 73 S.E. 1009 (1912), and ordinary rules of contract govern their interpretation. The general rule of contract is that "[a]ll contemporaneously executed written instruments between the parties, relating to the subject matter of the contract, are to be construed together in determining what was undertaken." *Yates v. Brown,* 275 N.C. 634, 640, 170 S.E. 2d 477, 482 (1969). Thus, where a note and a deed of trust are executed simultaneously and each contains references to the other, the documents are to be considered as one instrument and are to be read and construed as such to determine the intent of the parties. *Bank v. Belk,* 41 N.C. App. 356, 255 S.E. 2d 421 *cert. denied* 298 N.C. 293, 259 S.E. 2d 911 (1979); *see, Frye v. Crooks,* 258 N.C. 199, 128 S.E. 2d 257 (1962). Of course, if the language in the separate instruments defining the conditions upon which a power of sale may be exercised is contradictory, language in a deed of trust expressly limiting the exercise will govern. *Worley v. Worley,* 214 N.C. 311, 199 S.E. 82 (1938).

Applying these principles to the present case, we conclude initially that proper interpretation of the provisions in the Note and the Deed of Trust prescribing the conditions of default re-

quires that the instruments be read together as one contract rather than as two independent agreements. Thus, the "problem is not what the separate parts mean, but what the contract means when considered as a whole." *Simmons v. Groom,* 167 N.C. 271, 275, 83 S.E. 471, 473 (1914).

The provisions at issue in the present case are those in the Deed of Trust and those in the Note concerning default and acceleration. Although similar, they are not identical. The parties have stipulated on this appeal that original drafts of the Note and Deed of Trust were prepared by counsel for Sutton, the mortgagor, and that these drafts contained consistent clauses regarding the rights of Richardson in the event of failure of Sutton to pay principal and interest or failure to comply with all terms and conditions of the Note and Deed of Trust. On 9 November 1976 counsel for both parties met to discuss revisions of several of the exhibits to the purchase agreement, including the Promissory Note and the Deed of Trust. Subsequent to that meeting, the form of the Note was revised although the Deed of Trust remained unchanged.

Respondent mortgagor contends that the express language of the Deed of Trust requires that written notice be given in the event of *any* default and that the right to foreclose does not arise until thirty days after such notice, despite the "apparently inconsistent terms" in the Note. In support of this contention respondent relies upon the decision of our Supreme Court in *Worley v. Worley, supra.*

In *Worley,* the mortgagors executed four notes, the first of which specified that interest was "due and payable annually." The deed of trust securing payment of the notes, however, included a provision for power of sale "if default be made in the payment of said bonds or the interest on same, or any part of either at maturity . . . ." 214 N.C. at 312, 199 S.E. at 82. Upon the mortgagors' failure to pay interest on the first note at the end of one year, the mortgagee attempted to foreclose under the power of sale, which foreclosure was enjoined. In permitting recovery in an action brought by the mortgagors to recover damages for losses on account of the unlawful foreclosure, the Supreme Court held that the language in which the power of sale was conferred in the mortgage limited the right to sell, despite the inconsistent

reference in the note to annual payment of interest: "The court cannot shorten the time on which the parties have expressly agreed." 214 N.C. at 313, 199 S.E. at 83.

*Worley v. Worley, supra,* is clearly distinguishable from the case now before us. Here, although the relevant provisions in the Note and in the Deed of Trust are not identical, they are not inconsistent. The Deed of Trust first specifies that acceleration may occur if the mortgagor "fails to make any payment required in the Note hereby secured or of the interest on same, or of any part of either, or of any taxes, charges and assessments within thirty (30) days after the same shall become due and payable." In the same sentence, it is specified that acceleration may occur "if default be made with reference to procuring, paying for, assigning and keeping in force policies of insurance as herein provided, or if default be made in the due fulfillment of the covenants and agreements or any of them herein contained, and such default shall continue for thirty (30) days after receipt of written notice from the [mortgagee] to the [mortgagor]." Even without reference to the terms of the Note, a logical interpretation of this language is that there is a right of acceleration and foreclosure upon the failure of the mortgagee to pay principal, interest, or taxes, charges and assessments within thirty days from the date due without regard to notice, but that there is no such right upon the failure of the mortgagor to comply with the provisions requiring it to maintain insurance or to comply with the other covenants and agreements between the parties unless written notice has been given and thirty days has elapsed since the giving of the notice. Default in the payment of principal, interest, and taxes are events clearly within the knowledge of the mortgagor. Default in the fulfillment of other covenants and agreements, such as default in maintaining the property in good order and repair or in maintaining the proper amount of insurance, are events more peculiarly within the knowledge of the mortgagee, and written notice may be necessary to apprise the mortgagor of defaults of this character.

That this interpretation correctly reflects the intention of the parties is confirmed by the language of the Note itself. In the revised Note the parties have underscored the distinction between the different types of events constituting default, using the number "(1)" to set off default in payment of any installment of

principal or interest or any other *sums* from the due date, and the number "(2)" to set off the failure to comply with "any and all of the other covenants, terms and provisions" of the Note and the Deed of Trust, *"i.e. any default other than the payment of principal and interest, or any portion of either"* (Emphasis added). This latter type of default is the only one as to which notice must be given. Under this interpretation of the agreement, petitioner Richardson, as mortgagee, had no duty to give written notice to respondent Sutton of default in the payment of the annual installments of principal and interest. Thus, the mortgagee's acceleration of the debt and the trustee's commencement of foreclosure proceedings after respondent's failure to pay the amount due on its annual installment of $17,947.27 by December 10, 1978 were fully authorized under the parties' agreement, and the judge correctly so found.

[2] Relying upon G.S. 25-1-208, respondent mortgagor next contends that even if the undisputed facts establish as a matter of law that Richardson had a right to accelerate the debt, Richardson's lack of good faith in its decision to accelerate precludes it from exercising the power of sale contained in the Deed of Trust. This contention is without merit. The statute relied upon is that portion of the Uniform Commercial Code which imposes a good faith requirement upon the exercise of a secured creditor's option to accelerate "at will" or "when he deems himself insecure." "These clauses are clearly distinguished from default-type clauses . . . where the right to accelerate is *conditioned* upon the occurrence of a condition which is within the control of the debtor." *Crockett v. Savings & Loan Assoc.*, 289 N.C. 620, 631, 224 S.E. 2d 580, 588 (1976). As in *Crockett, supra,* the right of acceleration upon which Richardson's rights depend in the present case is conditioned upon the occurrence of an event within the complete control of the debtor, i.e., compliance with the terms and conditions contained in the Note and the Deed of Trust. Thus, assuming *arguendo* that G.S. 25-1-208 is applicable to real property transactions, it is inapplicable to the type of acceleration clause at issue in the present case.

[3] Finally, respondent Sutton challenges the denial of its request for trial by jury upon the hearing de novo in Superior Court. We agree with the judge of the superior court that no trial by jury is required in hearings conducted under G.S. 45-21.16.

That statute was adopted by our General Assembly in response to the decision in *Turner v. Blackburn*, 389 F. Supp. 1250 (W.D.N.C. 1975), which held our then existing statutory procedure for foreclosure under a power of sale contained in a deed of trust to be constitutionally defective as applied in that it provided no assurance of notice to the mortgagor nor any hearing prior to foreclosure and sale. As adopted in 1975 in response to that case, G.S. 45-21.16 was intended by the legislature to meet minimum due process requirements, not to engraft upon the procedure for foreclosure under a power of sale all of the requirements of a formal civil action. To have done so would have been to render the private remedy as expensive and time-consuming as foreclosure by action. Thus, upon appeal from an order of the clerk authorizing the trustee to proceed with sale, the judge is limited upon the hearing de novo to determining the same four issues resolved by the clerk. *In re Watts*, 38 N.C. App. 90, 247 S.E. 2d 427 (1978). Those issues are: "[T]he existence of [a] (i) valid debt of which the party seeking to foreclose is the holder, (ii) default, (iii) right to foreclose under the instrument, and (iv) notice to those entitled to such . . . ." G.S. 45-21.16(d). That the General Assembly did not intend to provide for a full trial by jury is also indicated by the language of G.S. 45-21.16(d) which refers to appeal "to the *judge* of the district or superior court having jurisdiction" (emphasis added), and of G.S. 45-21.16(e) which refers to the right of either party to petition the resident superior court judge or chief district court judge, "*who shall be authorized to hear the appeal.*" (emphasis added). Further, under our state Constitution, the right to trial by jury applies only to cases in which the prerogative existed at common law or was granted by statute at the time the Constitution was adopted. *Kaperonis v. Highway Commission*, 260 N.C. 587, 133 S.E. 2d 464 (1963). *In Re Annexation Ordinances*, 253 N.C. 637, 117 S.E. 2d 795 (1961). Clearly, foreclosure by power of sale has historically been a private contractual remedy, *see, Kornegay v. Spicer*, 76 N.C. 95 (1877), and there was no right at the time our Constitution was adopted either by virtue of the common law or statute to a jury determination of the type of issues to be resolved by a hearing pursuant to G.S. 45-21.16.

At the hearing de novo held on 16 February 1979, the judge, upon competent evidence, found that Sutton was indebted to Richardson, the noteholder, that Sutton was in default, that

Richardson had a right to foreclose under the terms of the Deed of Trust, and that due notice was given to Sutton. These findings support the court's conclusion that the Substitute Trustee is entitled to proceed with foreclosure. The order appealed from is

Affirmed.

Judges ARNOLD and WEBB concur.