NO. COA14-166

NORTH CAROLINA COURT OF APPEALS

Filed: 7 October 2014

| | |
|---|---|
| IN THE MATTER OF THE FORECLOSURE of a North Carolina Deed of Trust executed by L.L. Murphrey Co., f/k/a/ L.L. Murphrey Hog Co., Lois M. Barrow, Larry Barrow, Connie M. Stocks, Donald Stocks and Doris Murphrey dated April 23, 1996 and recorded April 24, 1996 in Book 489 at Page 620, as modified by those certain Modification and Extension Agreements dated August 30, 1996, Recorded October 7, 1996 in Book 493 at Page 20, dated April 4, 1997, recorded April 25, 1997 in Book 497, Page 94, dated May 26, 1998, recorded June 29, 1998 in Book 507, Page 24 and dated August 21, 1998, recorded October 2, 1998, all in the Office of the Greene County Register of Deeds, | Greene County No.: 13 SP 61 |
| By Kluttz, Reamer, Hayes, Randolph, Adkins & Carter, L.L.P. Substitute Trustee. | |

Appeal by respondents from order entered 31 October 2013 by Judge Paul L. Jones in Greene County Superior Court. Heard in the Court of Appeals 27 August 2014.

*Driscoll Sheedy, P.A., by Susan E. Driscoll, for appellee.*

*WHITE & ALLEN, P.A., by John P. Marshall and Ashley C. Fillippeli, for appellants.*

ELMORE, Judge.

Lois M. Barrow, Larry Barrow, and Doris Murphrey (respondents) appeal from the Order Denying Motion to Dismiss and Authorizing Foreclosure entered by Judge Paul L. Jones on 31 October 2013. After careful consideration, we affirm.

## I. Background

In the instant case, the particular real estate security interest being foreclosed was a North Carolina Deed of Trust entered into on 23 April 1996 by Doris Murphrey, Lois M. Barrow, Larry Barrow, Connie M. Stocks, Donald Stocks, and L.L. Murphrey Hog Co. (LLM), a North Carolina corporation, in favor of Wachovia Bank, N.A., predecessor in interest to D.A.N. Joint Venture Properties of North Carolina, LLM (DAN). The deed of trust was recorded in the Greene County Register of Deeds and the Lenoir County Register of Deeds and amended over time by certain modification and extension agreements. To secure the deed of trust, respondents pledged certain items of real property as collateral. Wachovia also received a security interest in LLM's fixtures and items of personal property. The

deed of trust secures an indebtedness evidenced by five promissory notes (the Wachovia notes) executed by LLM, the borrower, in favor of Wachovia between July 1993 and March 1999.

LLM previously filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code on 8 June 2000. At that time, LLM was in default to Wachovia for $12,790,522.36 pursuant to the Wachovia notes. In LLM's Chapter 11 case, the Bankruptcy Court entered an order confirming LLM's fourth amended plan of reorganization ("Confirmed Plan" or "the Plan"). Pursuant to class III of the Confirmed Plan, Wachovia's claims were divided into Note A and Note B. Note A is an amortizing note in the amount of $8,000,000; Note B is a cash flow note in the amount of $3,500,000. Both Notes remained secured by the collateral pledged to secure the Wachovia notes. Respondents, LLM's principals, guaranteed Note A and Note B, which both listed a maturity date of 30 September 2011. Upon maturation, the Plan provided that Note A and Note B would be recapitalized and that the obligations of the guarantors would be limited to the amount of recapitalized debt.

The Confirmed Plan also specified:

> **R. Execution and Delivery of Revised Loan Documents**
>
> The Debtor and Wachovia will enter into

amended and restated Loan Documents (the "Wachovia Restated Loan Documents") consistent with the provisions of this Plan of Reorganization. The Debtor shall execute and

deliver such agreements, instruments and documents as may be reasonably requested by Wachovia. The Wachovia Restated Loan Documents shall contain reasonably and customary warranties, covenants and other terms as the Debtor and Wachovia may agree upon. The following shall constitute events of default:

(i) Nonpayment as required under [the] terms of Note A or Note B,

(ii) Material misrepresentation,

(iii) Material breach of warranties of covenants,

(iv) Subsequent voluntary or involuntary bankruptcy proceedings, or

(v) Reopening of current bankruptcy proceedings.

## S. Implementation Date

The Implementation Date for Note A and Note B shall be October 1, 2001, provided that the following Conditions Precedent have been met:

(i) Cash shall be available to the Debtor in an amount sufficient to permit payment in full of all Administrative Claims,

(ii) Eleven days shall have expired since the Confirmation Date and no stay of the Confirmation Order shall be in effect, and

(iii) The Wachovia and MLLC Restated Loan

Documents [referred to above as the "Wachovia Restated Loan Documents"] required by the Plan of Reorganization shall have been executed and delivered.

Wachovia did not execute the Restated Loan Documents referenced in the Confirmed Plan. Nonetheless, LLM made payments pursuant to the terms of the Confirmed Plan from 1 October 2001 through 2011. Post-confirmation, Wachovia sold the Wachovia notes to CadleRock Joint Venture, L.P., who later sold or assigned the Wachovia notes to DAN in 2008. DAN filed the necessary notices of assignment, amendments, and continuation statements with the Greene County Register of Deeds, the Lenoir County Register of Deeds, and the North Carolina Secretary of State.

Upon maturity of Note A and Note B, LLM and DAN could not agree to the amount of the recapitalized debt. Seeking a determination, LLM reopened the Chapter 11 case and filed an adversary proceeding in Bankruptcy Court. Judge J. Rich Leonard, United States Bankruptcy Judge for the Eastern District of North Carolina, ruled that LLM's total indebtedness due and owing to DAN was $6,186,362.00. Neither party appealed this judgment.

Thereafter, LLM filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code on 21 May 2012. After LLM's Chapter 7 filing, DAN filed a proof of claim in the amount of $6,056,645.26. DAN attached a copy of LLM's fourth amended plan of reorganization, copies of the requisite security agreements, and copies of the assignments it filed with the Greene and Lenoir County Register of Deeds. In January and February 2013, LLC's bankruptcy trustee filed motions requesting approval to conduct a proposed public sale of LLM's real and personal property free and clear of liens. The trustee submitted a draft of a proposed complaint that he anticipated filing in an adversary proceeding against DAN. The complaint alleged that the Wachovia notes and the deed of trust were avoidable pursuant to 11 U.S.C. § 5444(a)(3) (2013).

The real property that was the subject of the proposed public sale included five tracts of land in Greene County and one tract of land in Lenoir County. As DAN asserted liens on all but one of the tracts of real property, it filed an objection to the trustee's motion to sell free and clear of liens. DAN asserted that pursuant to 11 U.S.C. § 363(f)(4), its interest was not subject to a factual or legal dispute because LLM: (1) did not file any objection to DAN's proof of claim, and

(2) because LLM's indebtedness was reaffirmed in the bankruptcy court adversary proceeding. *See L.L. Murphrey Co. v. D.A.N. Joint Venture III, L.P.*, Adv. No. 11-00139, 2011 WL 6301214 (Bankr. E.D.N.C. Dec. 16, 2011) (calculating the recapitalized debt under the Confirmed Plan to be $6,168,362.00).

On 6 June 2013, Judge Leonard entered an order ("the Leonard order") in the Chapter 7 case. The Leonard order reviewed the terms of the Confirmed Plan, particularly the portions that purported to require Wachovia to execute Restated Loan Documents to reaffirm the loan. Judge Leonard determined the terms of the Confirmed Plan were "unambiguous and impose[d] an obligation on the parties, the debtor and Wachovia, to execute amended and restated agreements, instruments and other loan documents consistent with the treatment provided therein." Judge Leonard further concluded, "[i]n addition to being explicitly required, the execution and delivery of the amended and restated loan documents was a condition precedent for setting the implementation date for Note A and Note B as October 1, 2001." Further, Judge Leonard held that in the absence of the Restated Loan Documents, the description of Note A and Note B and the recitation of the terms were insufficient to constitute

negotiable instruments. Accordingly, Judge Leonard found that the trustee established the existence of a "bona fide dispute" regarding the validity of DAN's liens. Judge Leonard authorized the trustee to sell the real property free and clear of the liens asserted by DAN. Notably, the Leonard order did not terminate DAN's rights to foreclose on the deed of trust—it merely recognized the existence of a bona fide dispute between the parties and authorized the trustee to proceed with the sale of the requisite property.

DAN filed a Notice of Hearing for Foreclosure of Deed of Trust on 4 September 2013. Based on the Leonard order, LLM filed a motion to dismiss DAN's foreclosure action on 2 October 2013. On 31 October 2013, the matter came on for hearing before Judge Paul L. Jones in Greene County Superior Court. Judge Jones entered an order denying LLM's motion to dismiss. He also authorized the Substitute Trustee for DAN to proceed with the foreclosure of the subject property pursuant to the power of sale granted to him under the deed of trust. Judge Jones entered the following findings of fact:

> 2. The Deed of Trust secures an indebtedness evidenced by certain promissory notes executed by [LLM] in favor of Wachovia Bank, which were modified over time and through the Fourth Amended Plan (Confirmed Plan) filed in [LLM's] Chapter 11

Bankruptcy Case[.]

3. The Deed of Trust states that it operates as security for "any renewals, modifications or extensions" of the Notes identified in the Confirmed Plan, as well as "all present and future obligations of Grantor[s] to [DAN]." (Deed of Trust, p.3.)

5. Under the terms of the Confirmed Plan, the Notes were divided into two tranches: Note A and Note B were to "remain secured by that collateral pledged to Wachovia by [Borrower] prior to the Petition Date". [sic] Although the Confirmed Plan required entry by Borrower and Wachovia into "amended and restated Loan Documents", [sic] it did not specify what documents were required. Instead, the Confirmed Plan required that Borrower "execute and deliver such agreements, instruments and documents as may be reasonably requested by Wachovia." There was no requirement that the Barrow Family, Donald Stocks or Connie Murphrey execute any new documents.

. . .

8. Through the Adversary Proceeding, it was determined that the amount of the Recapitalized Debt was $6,186,362.00. (May 10, 2012 Order, Adv. Proc. No.: 11-00139-8-JRL, p.6.) Instead of paying the Recapitalized Debt in full or entering into new loan documents for the amount of the Recapitalized Debt, Borrower filed for bankruptcy under Chapter 7 of the United States Bankruptcy Code, Case No.: 12-03837-8-JRL. (Chapter 7 Case).

9. D.A.N. Joint Venture Properties of N.C., LLC is the current holder of the Notes and

the Deed of Trust.

Respondents now appeal.

## II. **Analysis**

### A. **Judge Leonard's order**

Initially, we note that defendant challenges finding of fact #2, #5, and #9 above as being unsupported by competent evidence. The forgoing analysis addresses each of these challenged findings in substance and illustrates how each is, in fact, supported by competent evidence.

Much of respondents' argument is premised on the belief that the Leonard order constituted a final judgment purportedly affecting the merits of the foreclosure action. We find it necessary to dispel this argument at the outset of this appeal. In their brief, respondents advance the following argument:

> The issue of whether the language of the Confirmed Plan, in the absence of Restated Loan Documents, is sufficient to constitute negotiable instrument **has already been litigated and determined by the Leonard Order.** The Leonard Order specifically provides that the Confirmed Plan is "unambiguous and imposes an obligation on the parties, the debtor and Wachovia, to execute [Restated Loan Documents] consistent with the treatment provided therein." In addition, the Leonard Order holds specifically that "in addition to being explicitly required, the execution and delivery of the [Restated Loan Documents] was a condition precedent for setting the

implementation date of Note A and Note B as October 1, 2001." Finally the Leonard Order provides that "these provisions appear mandatory and are not self-executing" and that "in the absence of [Restated Loan Documents], the description of Note A and Note B as well as the recitation of its terms, obligations and the treatment provided to Wachovia are insufficient to constitute negotiable instruments." DAN does not and cannot meet the Holder requirement of N.C. Gen. Stat. §45-21.16(d).

North Carolina must give full faith and credit to final judgments of Federal Courts. . . . **An Order of a Bankruptcy Court avoiding a mortgage lien is a Final Order**. . . . Issue preclusion prevents [DAN] from re-litigating the issue concerning holder status.

Respondents are misguided. "In order for collateral estoppel to apply in this case, the issues to be concluded must be the same as those in the prior Bankruptcy Court action[.]" *In re Foreclosure Under That Deed of Trust Executed by Azalea Garden Bd. & Care, Inc.,* 140 N.C. App. 45, 56, 535 S.E.2d 388, 396 (2000). The Bankruptcy Court did not rule on the merits of DAN's foreclosure action, and the Leonard order was not an adjudication on the merits. For example, the issue of whether DAN was the holder of a valid debt was not litigated and determined in the bankruptcy proceeding. Therefore, collateral estoppel is inapplicable. Respondents' counsel was aware that

Judge Leonard's order did not constitute an adjudication on the merits of the foreclosure. During the foreclosure hearing counsel stated, "Judge Leonard's decision is not an adjudication . . . but it's really darn convincing and persuasive argument as to how it is he was going to rule." In respondents' reply brief, they clarify that their position is not that the Leonard order constitutes a final order avoiding a mortgage lien; instead, they aver that it is an order establishing: (1) that the reorganization plan mandated new loan documents, and (2) that the failure to execute new loan documents meant that the payment obligations under the Confirmed Plan were insufficient to constitute negotiable instruments.

Regardless, as applied to the foreclosure action before us on appeal, the Leonard order lacks controlling authority. It is merely a determination that a "bona fide dispute" exists between LLM and DAN regarding the validity of DAN's liens. Under 11 U.S.C. §363(f), a trustee has the right to sell property free and clear of liens if there is a bona fide dispute as to the validity of the lien. Despite respondents' arguments to the contrary, Wachovia was not required to execute Restated Loan Documents for the Confirmed Plan to be valid and enforceable against respondents in the foreclosure action. As the trial

court found in Finding #5, the Confirmed Plan simply provides: "The debtor shall execute and deliver such agreements, instruments and documents as **may be reasonably requested** by Wachovia." Thus, the Confirmed Plan allowed Wachovia to determine what, if any, new loan documents Wachovia required. Restated Loan Documents were neither required nor a condition precedent for the Confirmed Plan to bind the parties.

Further, respondents have waived their right to advance the above argument because the record shows that they made timely payments pursuant to the terms of the Confirmed Plan for approximately ten years. *Clement v. Clement*, 230 N.C. 636, 639, 55 S.E.2d 459, 461 (1949) (holding doctrine of waiver provides that "[a] person may waive almost any right he has, unless forbidden by law or public policy.)

## B. <u>Foreclosure by Power of Sale</u>

Next, we must consider whether the trial court erred in authorizing DAN to foreclose on the subject properties. In a foreclosure by power of sale, the trial court shall enter an order permitting foreclosure upon finding: (i) a valid debt of which the party seeking to foreclose is the holder, (ii) default, (iii) right to foreclose under the instrument, and (iv) notice to those entitled. N.C. Gen. Stat. § 45-21.16(d)

(2013). Here, respondents essentially challenge the first and third elements of N.C. Gen. Stat. § 45-21.16(d) on the basis that DAN failed to produce competent evidence of a valid debt, failed to show that it was the current note holder, and was unable to show that it had a right to foreclose under the deed of trust. These issues are "question[s] of law controlled by the UCC [Uniform Commercial Code], as adopted in Chapter 25 of the North Carolina General Statutes." *In re Bass,* 366 N.C. 464, 467, 738 S.E.2d 173, 175-76 (2013). We conclude that the trial court did not err.

The following documents set out the rights of the parties in this case: (1) the five Wachovia promissory notes executed between 1993-1999 by LLM in favor of Wachovia; (2) the deed of trust securing the notes executed by respondents and amended over time; (3) LLM's fourth amended plan of reorganization filed 4 May 2001; (4) the Confirmed Plan effective 13 July 2001; and (5) the order determining LLM's indebtedness entered in the adversary proceeding. *L.L. Murphrey Co. v. D.A.N. Joint Venture III, L.P.*, Adv. No. 11-00139, 2011 WL 6301214 (Bankr. E.D.N.C. Dec. 16, 2011) (calculating the recapitalized debt under the Confirmed Plan to be $6,168,362.00).

For the reasons set forth above, we decline to address respondents' arguments that are premised entirely on the contention that the Confirmed Plan is not enforceable against them. However, we will address the following three specific arguments advanced by respondents: First, respondents aver that DAN is not the holder of a valid debt because the Confirmed Plan fails to qualify as a negotiable instrument. Second, respondents argue that the Confirmed Plan does not contain a sufficient description of the debt it proposes to secure. Third, respondents argue that the Confirmed Plan was not intended to operate as an extension or modification of the deed of trust.

First, we note that DAN need not prove that it is the holder of a negotiable instrument in order to satisfy element one of N.C. Gen. Stat. § 45-21.16(d). When determining whether a party is the holder of a valid debt, we must find (i) sufficient competent evidence of a valid debt, and (ii) sufficient competent evidence that the party seeking to foreclose is the current holder of the notes that evidence that debt. *In re Adams,* 204 N.C. App. 318, 322, 693 S.E.2d 705, 709 (2010). Prong two, whether DAN is the holder of a valid debt, need not be addressed. Respondents' argument that DAN is not

the "holder" of a valid debt is based on the premise that the Confirmed Plan is a nullity. Accordingly, we must only find competent evidence of a valid debt. In *Azalea*, this Court held that a "valid debt" can be evidenced by several documents (including a confirmed bankruptcy plan), each modifying the terms of the other. *Azalea*, 140 N.C. App. at 53, 535 S.E.2d at 394 (2000) (finding that "the compromise and settlement agreement and *plan of reorganization* that were negotiated, amended and ratified by the parties in this case modified the original documents[.]") (emphasis added). Here, the Wachovia notes were modified by the plan of reorganization, which was negotiated, amended, and ratified by the parties through the Confirmed Plan. The Confirmed Plan set forth the maturity date of the loans, interest rate, and events triggering default. LLM (at respondents' direction) made payments under the terms of the Confirmed Plan for approximately ten years. Upon review, we hold that the Confirmed Plan evidences a valid debt of which DAN is the holder.

In addition, the valid debt and DAN's holder status is further evidenced in the order entered by Judge Leonard. *See L.L. Murphrey Co. v. D.A.N. Joint Venture III, L.P.*, Adv. No. 11-00139, 2011 WL 6301214 (Bankr. E.D.N.C. Dec. 16, 2011).

Judge Leonard calculated LLM's recapitalized debt under the Confirmed Plan at $6,168,362.00 and found that DAN became the holder of this indebtedness in 2008. LLM did not appeal this order and it is therefore binding on this Court.

Second, the deed of trust and the Confirmed Plan both adequately describe the indebtedness each secures. In North Carolina, a deed of trust must identify the obligation secured so that all subsequent purchasers or lenders are afforded sufficient notice as to the nature of the obligations secured by the deed of trust. *In re Hall*, 210 N.C. App. 409, 413, 708 S.E.2d 174, 177 (2011) (holding "[t]o be a valid lien on real property, North Carolina law requires a deed of trust to specifically identify the obligation it secures.") Here, the deed of trust provides a detailed description of the obligations secured, as follows:

> (a) Note, dated July 9, 1993, in the original principal amount of $1,000,000, executed by Larry Barrow and Lois M. Barrow and payable to the Beneficiary (which, together with any and all renewals, modifications and extensions thereof, is hereinafter referred to as the "Barrow Note").

> (b) Note, dated July 9, 1993, in the original principal amount of $1,000,000, executed by Donald Stocks and Connie M. Stocks and payable to the Beneficiary (which, together with any and all renewals,

modifications and extensions thereof is hereinafter referred to as the "Stocks Note").

(c) Note, dated July 9, 1993 in the original principal amount of $1,131,478.94, executed by the Maker and payable to the Beneficiary (which, together with any and all renewals, modifications and extensions thereof, is hereinafter referred to as the "1993 Company Note").

The deed of trust also details the modification of the Wachovia notes over time, including the decrease in principal balance and extension of maturity dates. Further, the deed of trust contains a catchall phrase—stating it operates as security for "any renewals, modifications or extension" of the Wachovia notes and "all present and future obligations of [LLM and respondents] to [DAN]."

The Confirmed Plan specifically describes the obligations it secures as including:

A. Note #1: Note #1 is a promissory note dated July 9, 1993 in the original principal amount of $1,131,478.94. By its terms, this obligation accrued interest at the annual rate of 7.15%. It was to be repaid by monthly principal and interest payments in the amount of $17,160.40. This note matured July 10, 1999.

B. Note #17: Note #17 is a promissory note dated April 23, 1996 in the original principal amount of $3,500,000.00. By its terms, this obligation accrued interest at the annual rate of prime plus .75%. It

was to be repaid by monthly principal payments in the amount of $58,334.00 plus accrued interest. This note matures on May 1, 2001.

C. Note #18: Note #18 is a Declining Revolver Note dated April 23, 1996 in the original principal amount of $5,420,000.00. By its terms, this obligation accrued interest at the annual rate of 9%. It was to be repaid by quarterly principal payments in the amount of $250,000.00 plus accrued interest. This note matured March 15, 2000.

D. Note #19: Note #19 is a Grain Line of Credit Note dated April 23, 1996 in the original principal amount of $2,750,000.00. By its terms, this obligation accrued interest at the annual rate of prime plus 1%. It was to be repaid by monthly interest payments with principal due and payable at maturity. This note matured February 25, 1999.

E. Note #22: Note #22 is a future advances note dated March 16, 1999 in the original principal amount of $175,000.00. By its terms, this obligation accrued interest at the annual rate of prime plus 1.5%. It was to be repaid by monthly interest payments with principal due and payable at maturity. This note matured April 15, 1999.

We conclude that the description of the indebtedness evidenced in the deed of trust and the Confirmed Plan is sufficient under North Carolina law to notify creditors of the nature of the obligations secured by the deed of trust and likewise by the

Confirmed Plan. *Hall, supra.*

As to respondents' third argument, we note that they advance no specific argument to support their position that the Confirmed Plan was not intended to act as an extension or modification of the deed of trust. Our Supreme Court has held that a deed of trust executed as security for a debt will secure all renewals of the debt unless a different intent appears. *Wachovia Nat'l Bank v. Ireland*, 122 N.C. 571, 29 S.E. 835 (1898) ("The deed contains a covenant that the charge shall be binding for all renewals of the debts specified. This would be so without any agreement, unless a different intent appeared."). "Where a note is given merely in renewal of another note and not in payment thereof, the effect is to extend the time for the payment of the debt without extinguishing or changing the character of the obligation, and, in case of default, the holder may sue upon the original instrument." *Dyer v. Bray*, 208 N.C. 248, 180 S.E. 83 (1935).

> Where a [subsequent] contract involves the same subject matter as the first, but where no recession has occurred, the contracts must be construed together in identifying the intent of the parties and in ascertaining what provisions of the first contract remain enforceable, and in such construction the law pertaining to interpretation of a single contract applies.

*In re Fortescue*, 75 N.C. App. 127, 130, 330 S.E.2d 219, 221 (1985) (citation omitted) (applying terms of a loan modification agreement to find default of promissory note and foreclosure of deed of trust). "The court's primary purpose in construing a contract is to ascertain the intention of the parties." *Id*. at 130, 330 S.E.2d at 222; *see also In re Foreclosure of Sutton Investments*, 46 N.C. App. 654, 659-60, 266 S.E.2d 686, 689 (1980) (concluding "that proper interpretation of the provisions in the Note and the Deed of Trust prescribing the conditions of default requires that the instruments be read together as one contract rather than as two independent agreements.")

The modification of the Wachovia notes through the Confirmed Plan did not eliminate the original debt, as respondents contend. The plan of reorganization specifies: "[Note A and Note B] shall remain secured by that collateral pledged to Wachovia by the Debtor prior to the Petition Date and guaranties will remain in full force and effect for the Notes except as adjusted to reflect the amount of Recapitalized Debt, defined herein" and "[t]he Recapitalized Debt shall remain secured by the same Pre-Petition Collateral." The Confirmed Plan provides: "The guarantors of Wachovia's Notes A and B as provided for under the Plan shall be the same as pre-petition,

with the exception [] [of] Connie S. Murphrey[.]" Notably, the Confirmed Plan does not provide for a payoff of the Wachovia notes—it merely reclassifies the preexisting debt. Thus, the Confirmed Plan "set new, specific requirements that the parties in this case intended to follow, in addition to any agreements in the original promissory note and deed of trust, that were not irreconcilable." *Azalea*, 140 N.C. App. at 52, 535 S.E.2d at 393.

The deed of trust also states that it is to operate as security for "any renewals, modifications or extensions" of the Wachovia notes as well as "all present and future obligations of [LLM and the Barrow family] to [DAN]." Based on the language of the Confirmed Plan and deed of trust, we conclude that the parties intended for the deed of trust to operate as security for the Wachovia notes, as modified under the terms of the Confirmed Plan.

## C. Statute of Limitations

Respondents argue that DAN's foreclosure action is barred by the applicable statute of limitations set forth in N.C. Gen. Stat. § 1-47(2) and (3) (2013). We disagree and note that the crux of the statute of limitations argument hinges on our having

concluded that the Confirmed Plan is unenforceable against respondents.

N.C. Gen. Stat. § 1-47(3) (2013) provides:

> For the foreclosure of a mortgage, or deed in trust for creditors with a power of sale, of real property, where the mortgagor or grantor has been in possession of the property, within ten years after the forfeiture of the mortgage, or after the power of sale became absolute, or within ten years after the last payment on the same.

As the statute provides, the statute of limitations does not run until ten years after a final payment is made on an obligation. Respondents do not contest the fact that LLM made payments pursuant to the terms of the Confirmed Plan through 2011. Clearly, DAN is squarely within the requisite time frame in which it can bring its foreclosure action. We overrule respondents' argument.

## II. <u>Conclusion</u>

In reviewing the record in its entirety, we hold that DAN presented competent evidence of: (i) a valid debt of which the party seeking to foreclose is the holder, (ii) default, (iii) right to foreclose under the instrument, and (iv) notice to those entitled as required under N.C. Gen. Stat. § 45-21.16(d). Accordingly, we affirm the trial court's order.

Affirmed.

Judges CALABRIA and STEPHENS concur.