W. R. GRACE & COMPANY v. J. H. STRICKLAND.

(Filed 15 October, 1924.)

**1. Bills and Notes—Negotiable Instruments—Renewal.**

A renewal note taken by a bank is not necessarily an extinguishment of the note it is given to renew, and nothing else appearing, the bank takes with notice of the infirmity, when it has purchased the original one after maturity and the maker may set up the infirmity existing between himself and the payee named therein, who has negotiated it to the bank.

**2. Same—Holder—Infirmity. of Instrument—Notice.**

While ordinarily one who has acquired a negotiable instrument is prima facie presumed to be a holder in due course (C. S., 3033), yet when the title is shown to be defective the burden is on him to show that he or some person under whom he claims acquired the title as a holder in due course.

**3. Same—Prima Facie Case—Fraud.**

The principle upon which an unlettered person may not disclaim liability on a note signed by his cross-mark without requiring that it first be read to him, does not apply as to those taking with notice of the fraud, when the one who induced its execution by his acts of fraud, misrepresentations or deceit, had fraudulently lulled him into a feeling of security and induced him to execute the instrument.

**4. Same—Evidence.**

Evidence that an illiterate maker of a note was lulled into security in signing a negotiable instrument which had been fraudulently misrepresented to him, is sufficient as to those taking with notice of the fraud, without positive or direct assertions, when the fraud may be inferred from circumstances surrounding the transaction.

**5. Same—Instructions.**

Upon the evidence in this case : *Held,* a requested prayer for instruction was properly refused that denied the defense of fraud in the procurement of defendant's note.

**6. Bills and Notes—Negotiable Instruments—Renewal—Principal and Agent.**

The payee of a note acts as the agent of the holder when with the latter's consent he obtains a renewal note from the maker thereof.

**7. Bills and Notes—Negotiable Instruments—Corporations—Shares of Stock—Blue-Sky Law.**

Where a note has been given for shares of stock solicited in violation of the Blue-Sky Law, and the holder has acquired it with notice of its illegality, he may not maintain his action thereon.

APPEAL by plaintiffs from *Midyette, J.,* at April Term, 1924, of WAYNE.

The defendant executed the following note :

$164.58.                          DUNN, N. C., 23 June, 1921.

November 1, 1922, after date, I, we, or either of us promise to pay to the order of Seminole Phosphate Company, at the First National Bank, Dunn, N. C., one hundred sixty-four and 58-100 dollars, for value received, negotiable and payable without defalcation or discount, with interest, after maturity.  Each of the makers hereof, and the endorsers hereon, waive demand, notice and protest on this note, and guarantee the payment of this note at maturity or any time thereafter.  Int. after maturity.

Also the following paper:

### STOCK PURCHASE BLANK.
#### Mines: Croom, Fla.

THE SEMINOLE PHOSPHATE CO.,
    *Goldsboro, N. C.*

I hereby purchase from the Seminole Phosphate Company three shares of the capital stock of said company, at one hundred dollars per share (par value, $100.00); total, three hundred dollars. Payment for above stock to be as follows: Note due ............... You are authorized to attach the above stock certificate to my note or notes given on account of this purchase as collateral security, if you so desire. No conditions or agreements, other than those printed herein, shall be binding, either upon the purchaser or said Seminole Phosphate Company; and I certify that I have read this contract and understand the same.

Witness my hand and seal, this 8 September, 1921.

J. H. (his × mark) STRICKLAND.    (Seal)

The payee endorsed the note in blank and delivered it to the plaintiffs as collateral security. It was taken in renewal of a former note given by the defendant to the Seminole Company and transferred by endorsement to the plaintiffs after maturity. The plaintiffs' cashier testified that the original note had been placed with the National Bank of Goldsboro and had been withdrawn by the Seminole Company, which had arranged the renewal; that the Seminole Company had authority to collect the note, but not to renew it, but that the plaintiffs had accepted the note in suit, knowing that its renewal had been procured by said company. It was admitted that the original note had been given for the purchase of stock in the Seminole Company; that the plaintiffs had bought it for value, after maturity, and that the note sued on had been given in renewal and had gone into the hands of the plaintiffs before maturity.

The defendant alleged that the original note had been obtained by fraud and transferred to the plaintiffs after maturity, and contended that in this suit he could set up against the plaintiffs the same defenses he could have set up in a suit on the original note.

The following verdict was returned:

1. Was the defendant induced by fraud to execute the original note given for the stock? Answer: Yes.

2. If so, did the defendant waive said fraud? Answer: No.

3. Did the plaintiffs take the renewal note in suit without a knowledge of any defect? Answer: Yes.

Judgment for the defendant. Appeal by the plaintiffs.

*Kenneth C. Royall and D. C. Boney for plaintiffs.*
*Young, Best & Young for defendant.*

ADAMS, J.   It is admitted that the plaintiffs took the note in suit before it was overdue, for good faith and value, and without knowledge of any infirmity.   It is therefore contended that the plaintiffs are holders in due course and entitled to judgment.   C. S., 3033.   Every person is deemed prima façie to be a holder in due course; but when it is shown the title of any person who has negotiated the instrument was defective, the burden is on the holder to prove that he, or some person under whom he claims, acquired the title as a holder in due course. C. S., 3040.   The plaintiffs admit they purchased the original note after maturity, and the verdict shows that its execution was fraudulently procured.   Consequently, the plaintiffs held the first note subject to the defendant's equity.   *Wilkins-Ricks Co. v. Welch,* 179 N. C., 266.   The question is whether such equity may be pleaded against the plaintiffs in their suit on the second note.

The parties admit that the note in controversy was given in renewal of the original.   As applied to negotiable instruments, the word "renewal," or "renewed," signifies more than the substitution of one obligation for another.   It means the substitution in place of one engagement of a new obligation on the same terms and conditions—that is, the reëstablishment of a particular contract for another period of time. *Kedy v. Petty,* 54 N. E. (Ind.), 798; *National Bank v. Fickett,* 50 S. E. (Ga.), 396; *Griffin v. Long,* 131 S. W. (Ark.), 672; *Hyman v. Devereux,* 63 N. C., 624; *Kidder v. McIlhenny,* 81 N. C., 123; *Bank v. Hall,* 174 N. C., 477.   In 8 C. J., 443 (656), it is said: "Where a note is given merely in renewal of another note, and not in payment, the renewal does not extinguish the original debt nor in any way change the debt, except by postponing the time of payment."   *Bank v. Bridgers,* 98 N. C., 67.   If the second note be given and accepted in payment of the debt, and not in renewal of the obligation, a different principle will apply. *Wilkes v. Miller,* 156 N. C., 428; *Collins v. Davis,* 132 N. C., 106; *Smith v. Bynum,* 92 N. C., 108.   The first note was surrendered, it is true; but the plaintiffs' admission that the note sued on was accepted in renewal is inconsistent with any suggestion that the original debt was thereby extinguished.

The Seminole Company, no doubt with the plaintiffs' consent, withdrew the former note from the National Bank of Goldsboro for the purpose of having it renewed, and the plaintiffs accepted the renewal note with full knowledge of the facts.   It is apparent that in renewing the note the Seminole Company acted as the plaintiffs' agent, and that, with respect to the defense pleaded, the plaintiffs are in no better situation

than they occupied when they became the holders of the original note. They did not become holders, in due course, of either paper; and the renewal note, in like manner with the original, was open to the defense of fraud. That is, as between the defendant and the Seminole Company, and as against the plaintiffs, who were not holders in due course, the second note was subject to the defense which might have been made against the first. *Tyler v. Anderson,* 6 N. E. (Ind.), 600; *Hunt v. Rumsey,* 9 L. R. A. (Mich.), 674; *Adams v. Ashman,* 53 Atl. (Penn.), 375. The principle is recognized by *Bigelow, C. J.,* in *Sawyer v. Wiswell,* 9 Allen (Mass.), 39. It will be observed that the paper in suit is not a second note, unrelated to the first, and executed to the plaintiffs as endorsees, for value and without notice, as in *Calvert v. Williams,* 64 N. C., 168.

The plaintiffs took other exceptions, which refer to the charge on the issue of fraud. It is insisted that the alleged representation was harmless, that it was not relied on, and that the element of fraud was not disclosed by the evidence.

The defendant testified that he could neither read nor write, and that the agent who had sold the stock told him that the paper which he then delivered was a certificate of stock. "He told me that the paper he left with me was stock." The conduct of the agent cannot be justified or its effect neutralized by proof that the certificate was attached to the note when the retention of the certificate was a material factor in the consummation of the fraud.

The plaintiffs requested this instruction: "If the defendant signed his name to the stock-purchase contract introduced in evidence without asking the same to be read to him, he is bound by the terms thereof; and since the contract is not evidence of fraud, you should answer the second [first] issue 'No.'" The instruction was substantially given, and then modified by the words, "unless something was done or said by the agent of the company to lull him into security or throw him off his guard." As argued by the plaintiffs, it is the duty of an illiterate person, before signing a paper, to have it read to him, and as a general rule his failure to do so is treated as negligence, for which the law affords no redress; but this principle does not apply in case of fraud or false representation, by which the person signing the instrument is lulled into security or thrown off his guard and deceived. *Griffin v. Lumber Co.,* 140 N. C., 514; *Leonard v. Power Co.,* 155 N. C., 10; *Pittman v. Tobacco Growers Assn.,* 187 N. C., 340. The plaintiffs admit that the modified instruction is correct as an abstract proposition, but contend it is not supported by the evidence. An instruction which is not based on sufficient evidence is erroneous (*Williams v. Harris,* 137 N. C., 460), but we think there is evidence tending to show the defendant was thrown

off his guard. Positive or direct assertion to this effect is not required; proof of circumstances from which the jury may reasonably infer the fact is sufficient.

The jury were instructed to answer the second issue "No," if they believed the evidence, and the plaintiffs excepted on the ground that the defendant, knowing the paper he held was not a certificate of stock, retained it for more than a year without complaint. The defendant did not discover the fraud until after he had executed the renewal note (*Gilpin v. Machine Co.,* 29 L. R. A. (N. S.), 477), and did not treat with the plaintiffs after such discovery. *McDowell v. Simms,* 41 N. C., 278; *Alexander v. Utley,* 42 N. C., 242; *Knight v. Houghtalling,* 85 N. C., 17, 31. He has not brought suit for rescission, but asserts his right to an equitable defense in the plaintiffs' action at law. Besides, the plaintiffs cannot escape responsibility for the fraud on the ground that the defendant was negligent, because the evidence shows, and the verdict has established the fact, that the agent resorted to means calculated to induce the defendant to forego inquiring into the fraud. *Miller v. Mateer,* 172 N. C., 401, 406.

We have considered all the plaintiffs' exceptions, and find them untenable; but there is another ground on which the judgment should be upheld. The contract of subscription did not comply with the provisions of section 6367 of the Consolidated Statutes. The note, therefore, was not enforceable against the defendant by the Seminole Company, and likewise is not enforceable in this action, for the reason that the plaintiffs, as we have said, are not holders in due course. *Bank v. Felton, post,* 384; *Miller v. Howell,* 184 N. C., 119; *Glenn v. Bank,* 70 N. C., 191.

We find

No error.