H. W. CABLE, INDIVIDUALLY AND H. W. CABLE, ADMINISTRATOR OF THE ESTATE OF LIZZIE W. CABLE v. HARDIN OIL COMPANY, GARLAND SMOTHERS, TOM B. SMOTHERS, P. N. HOOPER INSURANCE AGENCY, EDGAR CABLE, HARVIE CABLE, WILLIAM CABLE, RUBY CABLE LANE, MILDRED HOLIDAY, ADELL CAUDILL, NELLIE WILLIAMS, MAUDE LANDRETH, LACY CABLE, ROBERT CABLE, DILLARD WILLIAMS, AND PAUL WILLIAMS

No. 7119SC150

(Filed 31 March 1971)

1. Wills § 67— ademption — foreclosure sale after testatrix' death

A devise to testatrix' son was not adeemed by a foreclosure sale of the devised property after the death of testatrix, since the doctrine of ademption operates only during the lifetime of the testatrix.

2. Wills § 67— ademption — execution of deed of trust on devised property

Devises of a tract of land to testatrix' son and a portion of another tract to her daughter were not adeemed when testatrix executed deeds of trust on such property after the execution of her will, notwithstanding one of the deeds of trust described the two separate tracts by metes and bounds as a single tract.

3. Wills § 35— devise of property subject to deeds of trust — time of vesting

Devised property vested in the devisees, subject to the liens of deeds of trust on such property, at the time the will was probated; consequently, the devisees owned the equity of redemption in the devised property at the time the property was foreclosed after the death of the testatrix. G.S. 31-39.

4. Bills and Notes § 14; Payment § 1— renewal note — continuance of original debt

A new note not given in payment but merely in renewal does not change the original debt.

5. Bills and Notes § 14; Mortgages and Deeds of Trust § 17— deed of trust to secure endorsements of note — default in renewal note not signed by trustor

Where testatrix executed a $1500 deed of trust as security for the cestuis' endorsements on a $1500 note to a bank signed by testatrix and her son as makers, the son subsequently executed a renewal note, also endorsed by the cestuis but not signed by testatrix, consolidating the $1500 indebtedness with other amounts which he owed to the bank, the second note was renewed by the son's execution of a note for a larger amount, including accrued interest, which was endorsed by the cestuis but was not signed by testatrix, the cestuis paid this third note upon default, and the property secured by the $1500 deed of trust was sold upon foreclosure of a superior deed of trust after testatrix' death, leaving surplus funds, it was *held* that the $1500 indebtedness which the cestuis secured with their endorsement was

not paid until the cestuis paid the third note upon default, and that the trial court properly determined that the $1500 deed of trust was a lien upon the surplus proceeds from the foreclosure sale of the tract of land which it covered.

6. **Wills § 68— separate devises of two tracts — foreclosure sale of devised property as single tract — tracing of proceeds**

Devises of a tract of land to testatrix' son and a portion of another tract to testatrix' daughter do not fail because of the "mingling of funds" resulting from a foreclosure sale of the two tracts as a single tract after testatrix' death, since the devises were vested at the time of the sale and could not be affected by the conversion of the devisees' interest to cash.

7. **Wills § 56— devise of land — power of selection by devisee — sufficiency of description**

Devise to testatrix' daughter of a "tract of 25 acres to be selected by her" out of a specified larger tract is not void for vagueness and uncertainty.

APPEAL from *Long, Superior Court Judge,* 22 October 1970 Session of RANDOLPH County Superior Court.

Lizzie W. Cable (Mrs. Cable) executed a will on 12 January 1957. In Item II of the will she devised to her son Harvey Cable (Harvey) (also referred to in the record as H. W. Cable and Harvie W. Cable) a 73-acre tract of land conveyed to the testatrix and her late husband by deed from Everett Gambill (the Everett Gambill tract). In Item III she devised to her daughter, Ruby Cable Lane (Ruby), "a tract of 25 acres to be selected by her from the tract purchased by my husband and me from Emory Bullard [the Emory Bullard tract], which said tract contains in all 73 acres. . . . " Item IV of the will provides: "All of the rest, residue and remainder of my estate, both real and personal, I hereby will, devise and bequeath to my children other than my son, Harvey Cable, and my daughter, Ruby Cable Lane. . . . "

On 19 March 1959, Mrs. Cable executed a deed of trust to a trustee for the Federal Land Bank of Columbia to secure an indebtedness of $6,500. The deed of trust covered the tracts of land mentioned in Items II and III of the will and described them by metes and bounds as a single tract of 133 acres. (The description in the deed of trust notes that the tract conveyed to Mrs. Cable and her late husband by Emory Bullard contains 60 acres, rather than 73 acres as called for in the deed.)

Mrs. Cable's will was probated 6 February 1967. Payments under the deed of trust to the Federal Land Bank became in default and foreclosure proceedings were instituted. The property security was advertised as a single tract, and after a sale and several resales an order was entered, 27 February 1969, confirming a purchase price of $47,350. After the payment of the indebtedness under the deed of trust and costs the trustee deposited in the office of the Clerk of Superior Court the surplus funds in the amount of $39,898.78.

On 28 April 1970, Harvey, as administrator of the estate of Mrs. Cable and also individually, filed in Superior Court a petition requesting that the ownership of the surplus funds be determined and that they be ordered paid to him as administrator. Various persons claiming an interest in the funds, including all of the living children of Mrs. Cable and all of the children of her deceased children, were named parties defendant.

The matter came on for hearing before Judge Long and a jury trial was waived. In an order dated 22 October 1970, Judge Long found and concluded *inter alia* that: (1) A deed of trust, filed for registration on 28 March 1962, from Mrs. Cable to J. S. Moore, Jr., trustee for Smothers Warehouse, in the principal sum of $1,500, covers the tract of land which is referred to in Item III of the will and known as the Emory Bullard property, and that deed of trust constitutes a lien on the surplus funds remaining from the sale of that tract. (2) A deed of trust, filed for registration 3 January 1964, from Mrs. Cable, H. W. Cable, and Larry Cable to J. S. Moore, Jr., trustee for Tom B. Smothers and Garland Smothers, t/a Smothers Warehouse, in the principal sum of $7,868.84, covers the tract of land devised in Item II of Mrs. Cable's will and known as the Everett Gambill lands, and that deed of trust constitutes a lien on the surplus funds remaining from the sale of that tract of land. (3) Various other enumerated claims of judgment creditors constitute liens on the surplus funds.

The court thereupon ordered that the clerk: (1) disburse to Smothers Warehouse the sum of $1,500 plus accrued interest in full satisfaction of the deed of trust filed 28 March 1962; (2) disburse to Tom B. Smothers and Garland Smothers the sum of $7,868.84, plus accrued interest, in full satisfaction of the deed of trust filed 3 January 1964; (3) pay various sums in satisfaction of other liens which are not involved in this appeal;

(4) pay the remaining funds to the administrator who, after paying the debts of the estate, "shall disburse the remaining portion of said funds to those persons entitled thereto under the provisions of Items 2, 3, and 4 of the Last Will and Testament of Lizzie W. Cable, as he may be hereafter directed by the Court."

The proceeding was retained by the court "for further findings as to the value of the respective tracts of land from which foreclosure these surplus funds were derived."

All of the children and grandchildren named as defendants, except for Harvey Cable and Ruby Cable Lane, appealed.

*H. Wade Yates for defendant appellants Edgar Cable, William Cable, Mildred Holiday, Adell Caudill, Nellie Williams, Maude Landreth, Lacy Cable, Robert Cable, Dillard Williams and Paul Williams.*

*McLeod and Campbell by W. F. McLeod for defendant appellees T. Garland Smothers and Tom B. Smothers.*

*Coltrane and Gavin by T. Worth Coltrane for petitioner appellee Harvey W. Cable, individually, and Harvey W. Cable, administrator of the estate of Lizzie W. Cable, and defendant appellee Ruby Cable Lane.*

GRAHAM, Judge.

We note at the outset that the deed of trust in the amount of $7,868.84, filed for registration 3 January 1964, was determined to be a lien only on those surplus funds derived from the sale of the tract of land devised by Mrs. Cable to her son Harvey. The order contemplates that this deed of trust is to be paid out of these particular funds. Thus, unless appellants have some interest in these funds, they have no standing to attack the portion of the order having to do with this deed of trust.

[1] Appellants argue that as heirs they have an interest in the funds derived from the sale of that tract, contending that Mrs. Cable's devise to her son Harvey (and also the devise to Ruby) was adeemed when the Federal Land Bank deed of trust was foreclosed and the land sold. This argument is without merit. The doctrine of ademption operates only during the lifetime of the testator. *King v. Sellers,* 194 N.C. 533, 140 S.E. 91; *Starbuck v. Starbuck,* 93 N.C. 183. Consequently, the fore-

closure and sale, which did not take place until almost two years after the will was probated, could not have constituted an ademption.

[2]   Appellants argue further that the execution of the deeds of trust on the property devised, and in particular the execution of the deed of trust which described both tracts as a single tract, constituted an ademption. We disagree. As stated in 57 Am. Jur., Wills, § 1579, p. 1081, "an ademption of a legacy or devise may result from a variety of causes or circumstances, among which may be mentioned, in the case of gifts of specific property, the nonexistence of the property at the death of the testator, or its consumption, loss, disposal by sale, gift, or other alienation, or change in form, *during the lifetime of the testator. . . .* " (Emphasis added). (For a collection of the North Carolina cases dealing with the subject of ademption and an analysis of whether ademption by extinguishment of alienation depends upon the intention of the testator or simply operates as a matter of law, see *Grant v. Banks,* 270 N.C. 473, 155 S.E. 2d 87.)

Mrs. Cable did not dispose of the property during her lifetime and at her death it remained *in specie.* The only change that occurred subsequent to the execution of Mrs. Cable's will was that the property was subjected to the liens of the various deeds of trust. Certainly these added encumbrances did not prevent the equity of redemption, which was retained by Mrs. Cable, from passing under the will. To hold otherwise would be to require a testator to make a new will on every occasion that a mortgage was placed on any property that he had previously devised. Furthermore, describing the two separate tracts by metes and bounds as a single tract is of no significance. The boundaries of the two tracts, each of which had been conveyed to testatrix and her late husband by separate deeds, remained easily ascertainable.

[3]   The property devised to Harvey and to Ruby vested, subject to the liens of the various deeds of trust, at the time the will was probated. G.S. 31-39; *Hargrave v. Gardner,* 264 N.C. 117, 141 S.E. 2d 36; *Morris v. Morris,* 245 N.C. 30, 95 S.E. 2d 110. Hence, Harvey owned the equity of redemption in the 73-acre tract at the time the property was foreclosed. Appellants had no interest in that tract and therefore can make no complaint with respect to the $7,868.84 deed of trust that has been

held to be a lien against the surplus funds resulting from its sale.

Appellants, of course, do have an interest in the proceeds resulting from the sale of the Emory Bullard tract as only 25 acres of that tract were devised to Ruby. We therefore examine appellants contentions with respect to the $1,500 deed of trust, filed for registration 28 March 1962, which the court held to be a lien upon the proceeds remaining from the sale of that tract.

[5]   Appellants contend the indebtedness secured by this deed of trust was paid. Evidence with respect to this deed of trust tended to show the following: Garland Smothers and Tom B. Smothers (Smothers) are engaged as partners in the operation of Smothers Warehouse. Money for farm use was loaned to Harvey Cable from time to time by the First National Bank of Reidsville and various notes were given evidencing the indebtedness. The first note, in the amount of $1,500, was signed by Harvey and Mrs. Cable as makers and was endorsed by Smothers. On 9 March 1962, Mrs. Cable executed the $1,500 deed of trust in question as security for Smothers endorsement. On 24 December 1963, the $1,500 indebtedness to the bank was consolidated with other Cable accounts and evidenced by a single note in the amount of $9,368.84. This note was signed by Harvey and his son as makers and endorsed by Smothers. On 26 December 1963, Mrs. Cable executed the deed of trust in the amount of $7,868.84 to a trustee for Smothers as further security for their endorsement of that note. The principal of this deed of trust, when added to that of the $1,500 deed of trust executed in March 1962, totaled $9,368.84, which was the total amount of Smothers' contingent liability as endorsers on the note executed to the bank 24 December 1963.

On 13 October 1965, the $9,368.84 note to the bank was renewed by the execution and delivery of a note in the amount of $10,465.78, which amount included accrued interest and insurance. This note was signed by Harvey Cable and his son and was also endorsed by Smothers. On 18 November 1966, Smothers were called upon to pay this note and they did pay it in full.

[4]   Mrs. Cable never signed any note given to the bank, except for the first note in the amount of $1,500. When that

note was replaced by another note on which her signature did not appear, she was obviously released from any liability to the bank. However, the deed of trust in question did not secure the obligation to the bank, but secured Smothers against loss by their endorsement of the note given to secure the original $1,500 debt of Mrs. Cable's son. Watkins v. Simonds, 202 N.C. 746, 164 S.E. 363. A new note, where not given in payment, but merely in renewal does not change the original debt. 10 C.J.S., Bills and Notes, § 279, p. 770. Under the evidence in the record, the $1,500 indebtedness which Smothers secured with their endorsement was not paid until they were called upon to pay it on 18 November 1966. It was this contingent liability which was secured by Mrs. Cable's deed of trust, and this contingent liability continued uninterrupted until it became absolute on 18 November 1966. It is true that "[a]s a general rule, an extension to the principal of the time of payment or performance of the principal obligation by the creditor or obligee, without the consent of the surety, will discharge the security." 72 C.J.S., Principal and Surety, § 162, p. 647. However, no contention is made that the security of Mrs. Cable's deed of trust was discharged because Smothers, by endorsing renewal notes, acquiesced in an extension of time for the payment of the obligation to the bank. Moreover, while a renewal note ordinarily extends the time for payment, there is absolutely no evidence in the record before us as to when payment was due under the original $1,500 note. An inference arises that the renewal notes were for the purpose of consolidating debts rather than extending time for payment.

[5] It is our opinion, and we so hold, that the trial court correctly held the $1,500 deed of trust in question to constitute a lien upon the surplus proceeds from the sale of the tract of land which it covered.

[6] Appellants contend that the "mingling of funds," which has resulted from the sale of the two tracts of property, has made it impossible to trace the funds to the individual tracts and therefore the devises must fail. The devises, however, had taken effect and were vested at the time the sale occurred. Consequently, they could not be affected by the conversion of the devisees' interest to cash.

[7] Appellants also point to the special problem created by the devise to Ruby of 25 acres to be selected by her out of the

larger Emory Bullard tract. They say that this devise is void for vagueness and uncertainty. In the case of *Hodges v. Stewart,* 218 N.C. 290, 10 S.E. 2d 723, a devise of 25 acres out of an 82-acre tract was held void for vagueness and uncertainty. However, there no power of selection had been given to the devisee or to anyone else. Where, as here, the power of selection is expressly granted to the devisee, such devises are uniformly upheld. See *Freeman v. Ramsey,* 189 N.C. 790, 128 S.E. 404; *Garrison v. Eborn,* 56 N.C. (3 Jones Eq.) 228; *Harris v. Philpot,* 40 N.C. (5 Ired. Eq.) 324; Annot., 157 A.L.R. 1129. Compare, *Redd v. Taylor,* 270 N.C. 14, 153 S.E. 2d 761.

We note that this cause has been properly retained by the Superior Court for further findings concerning the value of the respective tracts of land from which the surplus funds were derived.

Appellants have brought forward numerous other assignments of error which we deem it unnecessary to discuss. Suffice to say we have carefully reviewed and overruled all asignments of error properly presented.

Affirmed.

Chief Judge MALLARD and Judge PARKER concur.