**In re Johnnie V. BLEVINS, Debtor.**

**Twana Faye Blevins, Plaintiff,**

v.

**Avery County Bank, Defendant.**

**No. Civ. 199CV174.**

United States District Court,
W.D. North Carolina,
Asheville Division.

Aug. 22, 2000.

---

Samuel F. Furgiuele, Jr., Boone, NC, for Twana Faye Blevins.

Mark A. Pinkston, Van Winkle, Buck, Wall, Starnes & Davis, P.A., Asheville, NC, for Avery County Bank.

### MEMORANDUM AND ORDER

THORNBURG, District Judge.

**THIS MATTER** is before the Court on appeal from the judgment of Chief U.S. Bankruptcy Court Judge George R Hodges entered August 12, 1999. For the reasons stated below, the judgment is affirmed.

### I. STANDARD OF REVIEW

■ The decision of the Bankruptcy Court is reviewed by a two-step process. Reversal of the findings of fact of the Bankruptcy Court may occur only where the findings are clearly erroneous. *In re Deutchman,* 192 F.3d 457, 459 (4th Cir. 1999). The conclusions of law of the Bankruptcy Court are reviewed *de novo. In re Hutson,* 173 F.3d 424 (table), 1999 WL 95510 at *1 (4th Cir.1999) (citing *In re Bryson Properties, XVIII,* 961 F.2d 496, 499 (4th Cir.1992)).

■ Findings of fact are clearly erroneous "when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *In re Green,* 934 F.2d 568, 570 (4th Cir.1991) (citing *In re First Federal Corp.,* 42 B.R. 682 (W.D.Va.1984)). As stated by the Supreme Court:

> If the [lower court's] account of the evidence is plausible in light of the record viewed in it's entirety, the [appellate court] may not reverse it even though convinced that had it been sitting as trier of fact, it would have weighed the evidence differently. When there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous.

*In re Sherwood Ford, Inc.,* 1992 WL 295951, at *2 (D.Md.1992) (quoting *Anderson v. Bessemer City,* 470 U.S. 564, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985)).

■ In addition, due regard must be given to the opportunity of the Bankruptcy Court to judge the credibility of witnesses.

*In re Coston,* 991 F.2d 257, 262 (5th Cir. 1993).

### II. FACTUAL BACKGROUND

Having conducted a thorough review of the record, the Court adopts the findings of fact set forth in the Bankruptcy Court's Judgment of August 12, 1999. Those findings of fact are correct, accurate, and amply supported by the evidentiary record. The Court further notes that there was no dispute between the parties as to the material facts. A brief recitation of the factual background follows.

Plaintiff–Appellant, Twana Blevins, and her former husband, Johnnie Blevins ("the Debtor"), applied for and received two loans totaling $100,000 from the Defendant, Avery County Bank, in December 1992. The purpose of the loans was to purchase and begin operating a retail store. In connection with these loans, the Debtor and Plaintiff–Appellant executed two Promissory Notes, one dated December 23, 1992, in the amount of $60,000 and the other executed December 30, 1992, in the amount of $40,000. The loans were secured by deeds of trust attached to the Blevin's real property which included the jointly owned store and a house owned exclusively by the Debtor (but subject to a marital interest of the Plaintiff–Appellant).

The 1992 Promissory Notes specifically provided that both the Debtor and the Plaintiff–Appellant would continue to be bound by the notes until they were paid in full, and that they would continue to be obligated to pay the loans even if the loans were renewed or extended. **1992 Promissory Notes,** *included in* **Record on Appeal.** Shortly after purchasing the retail store, the Debtor and Plaintiff–Appellant separated. The Debtor maintained possession and control of the two parcels of real estate. When the 1992 Promissory Notes became due in December of 1993, the Debtor and Plaintiff–Appellant were unable or unwilling to pay the amounts owed on the notes. Instead of foreclosing on the loans, the Defendant allowed the

Debtor to extend the loan for an additional year providing he pay the interest due on the loans. The Debtor elected to pay the interest and the Defendant extended the loans by virtue of renewal promissory notes. Plaintiff–Appellant did not sign these renewal promissory notes.

In 1994 and again in 1995, the Defendant extended the 1992 loans for additional one year periods pursuant to Debtor's agreement to pay the interest due on the loans at the end of each one year period. The notes executed by the Debtor in 1993, 1994, and 1995 were intended as extensions of the time period for which to pay the amount due on the 1992 Promissory Notes. The 1993, 1994, and 1995 documents all reference the same loan numbers as the 1992 Promissory Notes. Neither the 1993, 1994, or 1995 documents provide that the 1992 Promissory Notes were satisfied or that the 1992 Deeds of Trust should be canceled.

On August 9, 1996, the Debtor filed for bankruptcy protection. In a telephonic hearing held on September 4, 1996, in which Plaintiff–Appellant's counsel participated, the Defendant maintained that it was entitled to have its loans to the Debtor and Plaintiff–Appellant satisfied out of the proceeds of the sale of the store and house. Defendant argued that its claim took priority over all others due to its Deeds of Trust. On September 10, 1996, the Bankruptcy Court entered an order allowing the sale of the real property and the inventory of the store. The order contemplated both the Defendant and Plaintiff–Appellant consenting to the sale and reaching an agreement about how the proceeds were to be distributed.

The record demonstrates that Plaintiff–Appellant did consent to the sale and reached an agreement about the distribution of the proceeds. On or about September 21, 1996, the Plaintiff–Appellant consented in writing to the sale of the property by signing a Statement of Intent which was filed with the Bankruptcy Court. That statement reads as follows:

The undersigned, Twana Blevins, hereby does state that she desires that the real property of the Debtor, Johnnie V. Blevins fdba Blevins' Store, be sold at public auction on September 21, 1996 at 10:00 a.m. as scheduled and advertised. The undersigned consents with full knowledge that her ownership interest in the property is also being sold. She states that she has no objection to the sale through the public auction and hereby fully consents to selling the property through public auction.

Plaintiff–Appellant also signed quit claim deeds for both pieces of property at the closing of the sale of those properties, further evidencing her consent to the sales. In addition, Plaintiff–Appellant signed a closing statement for the sale of the store. That statement sets forth the distribution of the sale proceeds to the Defendant, the very distribution which Plaintiff–Appellant now challenges.

The proceeds of the property sales were used to satisfy the Debtor and Plaintiff–Appellant's $100,000 debt (plus interest). At that time, the Deeds of Trust were canceled, as were the 1992 Promissory Notes. Not until nine months later, and well after her debts had been canceled, did Plaintiff–Appellant make a demand for any payment from the proceeds of the sale.

## III. DISCUSSION

Because the Bankruptcy Judge's findings of fact are not clearly erroneous, the Court is limited to a *de novo* review of the Bankruptcy Judge's conclusions of law. *Bryson*, 961 F.2d at 499. Summary judgment is appropriate when the factual allegations, taken in the light most favorable to the non-moving party, present no genuine issues of material fact for determination at trial. *Harleysville Mut. Ins. Co. v. Packer*, 60 F.3d 1116, 1119–20 (4th Cir. 1995). Where there are no genuine issues of material fact the court should examine the legal theories of the parties and enter a judgment as a matter of law. The pur-

pose of summary judgment is to prevent the great expense of a needless trial. *Bland v. Norfolk & Southern R.R. Co.,* 406 F.2d 863 (4th Cir.1969).

■ Plaintiff–Appellant raises two main issues on appeal. The Court will address each objection in turn. Plaintiff–Appellant first argues that the Bankruptcy Court erred by denying her objection to the motion by the bankruptcy trustee to close the bankruptcy estate and disburse funds. More specifically, Plaintiff–Appellant contends that the express provisions of the Bankruptcy Court's September 10, 1996, Order required both Plaintiff–Appellant and the Defendant Bank to agree about the distribution of the proceeds of the sale. Plaintiff–Appellant contends that there was no such agreement as to distribution and, consequently, the estate should not have been closed. However, the Bankruptcy Court found that Plaintiff–Appellant was present at the closings for both the store and the house and was made aware of the distribution of the sale proceeds. **Judgment, filed August 12, 1999, at ¶ 27.** Further, Plaintiff–Appellant signed the closing statement for the store which explicitly provided for the distribution of proceeds to the Defendant Bank in payment of Plaintiff–Appellant's debt to the Defendant. *Id.,* at ¶ 26. Finding no error in the Bankruptcy Court's findings of fact, nor with its initial decision to close the estate and order the funds disbursed, the Court hereby affirms that ruling.

■ Plaintiff–Appellant next contends that the Bankruptcy Court erred by granting Defendant–Appellee's motion for summary judgment. More specifically, Plaintiff–Appellant argues that the Bankruptcy Court was mistaken in treating Avery County Bank as a secured creditor and in approving the Trustee's disbursement of funds. The Bankruptcy Court found that under North Carolina contract law, the promissory notes executed by the Debtor in 1993, 1994, and 1995 were merely extensions of the 1992 Promissory Notes and therefore did not cancel the 1992 Notes or

the 1992 Deeds of Trust executed by the Debtor and the Plaintiff–Appellant. In particular, the Bankruptcy Judge focused on the fact that the 1993, 1994, and 1995 documents all reference the same exact loan number as the 1992 Promissory Notes. Furthermore, no language in the 1993, 1994, or 1995 documents states that the 1992 Promissory Notes were satisfied or that the 1992 Deeds of Trust were canceled. The Bankruptcy Court concluded that the 1993, 1994 and 1995 documents did not change the debt incurred by the Debtor and Plaintiff–Appellant, and therefore the Defendant Bank was still a secured creditor. In so holding, the Bankruptcy Court relied primarily on two cases. *Cable v. Hardin Oil Co.,* 10 N.C.App. 569, 575, 179 S.E.2d 829, 832 (1971) (**"A new note, where it is not given in payment, but merely in renewal does not change the original debt."**); *W.R. Grace & Co. v. Strickland,* 188 N.C. 369, 372, 124 S.E. 856, 857 (1924) (**stating that renewal of a note does not extinguish the debtor's obligations under the original note unless the renewal note was intended to be a repayment of the original**). The Bankruptcy Court found that Plaintiff–Appellant had presented no evidence that the 1993, 1994, and 1995 notes satisfied, or were intended to satisfy, the 1992 Promissory Notes. **Judgment, at ¶ 33.**

■ Plaintiff–Appellant argues that the two cases cited by the Bankruptcy Court do not actually support that Court's actions. This Court disagrees. Plaintiff–Appellant's best argument is that *W.R. Grace* does not apply because a "renewal" of a note signifies "the substitution in place of one engagement of a new obligation on the *same terms and conditions* ... " *Id.,* at 372, 124 S.E. at 857 (**emphasis added by Plaintiff–Appellant**). Plaintiff–Appellant then points to a few superficial differences in the terms of the 1995 notes versus the 1992 Promissory Notes, such as different interest rates and finance charge

amounts.[1] However, differences in interest rates or finance charges have no relevance in determining whether a subsequent note is intended as a renewal of an earlier one. *In re Mid–Atlantic Piping Products, Inc.,* 24 B.R. 314, 324 (Bankr. W.D.N.C.1982).

█ The *Mid–Atlantic* case discusses the rule of law in North Carolina which controls in this case, namely that absent an agreement to the contrary by the parties, renewal or extension of a promissory note is not considered a repayment of the original promissory note. *Id.* As Judge Wooten stated in that case:

> Generally, the mere execution of a renewal note does not discharge the original debt but operates only as an extension of the same debt, unless the parties by agreement express a contrary intention.... In consequence of this well-established rule, the burden of proving that the parties to a renewal or re-execution of a promissory note intended to extinguish the prior debt and to establish a novation rests on the party asserting the novation.

*Id.* (citations omitted).[2] Therefore, in this matter, the burden is on Plaintiff–Appellant to show that the renewal notes were intended to extinguish the prior debt. However, the Bankruptcy Court found that the renewal notes executed by the Debtor and the Defendant Bank were merely intended to extend the time to pay the amount due on the 1992 Promissory Notes. Plaintiff–Appellant has failed to present any evidence of a contrary intention by either party, especially the Bank. In the absence of any such evidence, Plaintiff–Appellant's argument must fail. *Id.,* at 325 (it is not "a commercially reasonable interpretation of the parties' conduct" to believe that a secured party would voluntarily release its existing collateral when executing documents to renew a loan).

Plaintiff–Appellant further argues that even if the 1995 notes are determined to have been renewal notes, they were not secured by the 1992 Deeds of Trust and therefore may not be enforced against Plaintiff–Appellant. Plaintiff–Appellant cites numerous cases from states other than North Carolina which all involve dragnet provisions. None of those cases apply as they are all clearly distinguishable from the instant matter because no dragnet provisions are involved here.

For the reasons discussed above, the Court hereby affirms the Judgment of the Bankruptcy Court which correctly granted Defendant–Appellee's motion for summary judgment.

## IV. ORDER

**IT IS, THEREFORE, ORDERED** that the Plaintiff–Appellant's appeal from the Judgment of the Bankruptcy Court entered August 12, 1999, is hereby **DISMISSED,** and that Judgment is hereby **AFFIRMED.**

**IT IS FURTHER ORDERED** that this matter be remanded to the Bankruptcy Court for further proceedings.

---

**1.** Plaintiff–Appellant also assigns great significance to the difference between the named trustees on the 1992 Promissory Notes versus the 1995 notes. The 1992 Notes name C.L. Hughes, III, as Trustee. The 1995 notes refer to Kelly Johnson as Trustee. However, the Court finds that Hughes and Johnson are law partners and this difference, which was at best a simple mistake, will not deprive the Defendant Bank or their rightful security interest in the property.

**2.** In support of this proposition, the *Mid–Atlantic* court cited the *Cable* decision which Plaintiff–Appellant unsuccessfully attempts to characterize as inapplicable to the instant matter.