IN THE MATTER OF THE FORECLOSURE OF A DEED OF TRUST FROM ELOISE HALL TO SIDNEY P. JESSUP, TRUSTEE, DATED OCTOBER 2, 2007 AND RECORDED IN BOOK 1745, PAGE 243, DARE COUNTYPUBLIC REGISTRY; SEE SUBSTITUTION OF TRUSTEE RECORDED IN BOOK 1812, PAGE 300

No. COA10-1002

(Filed 15 March 2011)

**Mortgages and Deeds of Trust— default—foreclosure—hypothecation agreement**

The trial court erred by finding that the debt owed by the construction company to the bank was evidenced by the 2008 note secured by the deed of trust under the terms of the hypothecation agreement and that the construction company had defaulted under the deed of trust. Thus, the trial court erred by concluding that the substitute trustee was entitled to foreclose on respondent appellant's property pursuant to the power of sale under the terms of the deed of trust.

Appeal by respondent Eloise Hall from order entered 29 March 2010 by Judge J. Carlton Cole in Dare County Superior Court. Heard in the Court of Appeals 10 February 2011.

*Oliver & Friesen, PLLC, by Jonathan E. Friesen, for Eloise Hall respondent appellant.*

**IN RE FORECLOSURE OF HALL**

[210 N.C. App. 409 (2011)]

*Hornthal, Riley, Ellis & Maland, LLP, by L. Phillip Hornthal, III, for Bank of Currituck petitioner appellee.*

McCULLOUGH, Judge.

Eloise Hall ("respondent-appellant") appeals from an order entered by the trial court authorizing a substitute trustee to proceed with foreclosure on her property pursuant to the terms of a deed of trust held by the Bank of Currituck. We reverse.

## I. Background

On 19 April 2007, Matthew Hall, President of Outer Banks Construction Co., Inc. ("OBC"), executed a promissory note in favor of the Bank of Currituck (the "Bank") in the principal amount of $550,000 with a maturity date of 18 April 2008 (the "2007 Note"). The purpose of the 2007 Note was to provide a back-up letter of credit on which OBC's bonding company could draw for the building of a construction project. The 2007 Note was labeled "Loan Number 65257145."

Subsequently, on 2 October 2007, respondent-appellant, mother of Matthew Hall, executed a North Carolina Future Advance Deed of Trust (the "Deed of Trust") to the Trustee for the Bank, which was recorded in the office of the Register of Deeds of Dare County on 4 October 2007. The Deed of Trust contained the following provision:

> This Deed of Trust is given to secure all present and future advances made or to be made pursuant to the terms of the obligation. . . . [T]he maximum amount of present and future obligations which may be secured at any one time is $350,000.00 . . . . The period within which any and all future advances are to be made and secured hereunder is the period between the date hereof and April 18th 2008.

The Deed of Trust further provided that the "loan documents" secured by the Deed of Trust included:

> [A] Promissory Note, issued by [the Bank] dated February 15th, 2007 in the face amount of $150,000 and modified and reduced to $80,000 on July 26th, 2007 and an Irrevocable Letter of Credit issued by [the Bank] dated April 19th, 2007 in the aggregate face amount of up to $550,000, and a Back up Line of Credit Facility dated April 19th, 2007 in the face amount of up to $500,000 executed by Matthew F. Hall President as [sic] Outer Banks Construction Co[.] Incorporated[.]

The Deed of Trust provisions made no reference to securing any renewals, modifications, or extensions of the obligations listed. At the time the Deed of Trust was executed, the present obligation secured totaled zero, as reflected on the face of the Deed of Trust.

On 2 October 2007, respondent-appellant also executed a Hypothecation Agreement. The terms of the Hypothecation Agreement authorized "Matthew Hall President Outer Banks Construction Co. Inc." to hypothecate or pledge as collateral certain property of Eloise Hall to secure "any present or future indebtedness, obligation or liability howsoever evidenced, . . . or any extension, modification or renewal thereof, the undersigned [Eloise Hall] hereby consenting to the extension or renewal . . . and waiving any notice of any such extension, modification or renewal."

As of 18 April 2008, the maturity date on the 2007 Note, OBC's bonding company had made no demands on the letter of credit. Therefore, on 19 April 2008, Matthew Hall executed a new promissory note in the principal amount of $550,000 (the "2008 Note"). The 2008 Note was labeled "Renewal of 65257145." In August 2008, OBC's bonding company began making draws on the letter of credit. No payments were made on the 2008 Note, and OBC defaulted.

The Substitute Trustee commenced this action upon filing a Notice of Hearing on Foreclosure of Deed of Trust on behalf of the Bank on 5 October 2009. A hearing was conducted before the Clerk of Superior Court of Dare County on 15 January 2010. The Clerk entered an order authorizing the Substitute Trustee to proceed with foreclosure under the terms of the Deed of Trust. Pursuant to statute, the order made the following findings of fact:

1. That The Bank of Currituck is the holder and owner of the [2008 Note], . . . and the balance and amounts due on [the 2008 Note] constitutes a valid debt owed by Outer Banks Construction Co., Inc. to The Bank of Currituck.

2. That the debtor, Outer Banks Construction Co., Inc., is in default under the [2008 Note] and the deed of trust . . . securing the debt which is identified and referred to hereinabove.

3. That said debt owed by Outer Banks Construction Co., Inc. to The Bank of Currituck is secured by [the Deed of Trust] . . . pursuant to the terms and provisions of the Hypothecation Agreement . . . .

4.  That, under the terms and provisions of the deed of trust, the Substitute Trustee has the authority to foreclose under the power of sale set forth in the deed of trust.

5.  That notice of this hearing has been served upon [all proper parties] . . . .

. . . .

7.  The deed of trust contains a power of sale. The note holder has the right to have the deed of trust foreclosed under the power of sale contained and set forth therein.

On 25 January 2010, respondent-appellant filed notice of appeal with the Clerk of Superior Court of Dare County. On 5 March 2010, a hearing was conducted in the Superior Court of Dare County. At the hearing, the trial court considered the documents involved and heard the testimony of Mr. Lee Wilson, credit administrator for the Bank. Mr. Wilson testified that it was the understanding of the parties that the 2008 Note was merely an extension of the 2007 Note for an additional year because of construction delays on the project for which the 2007 Note was issued and that the Deed of Trust would continue to secure the renewal. However, Mr. Wilson acknowledged that he was not present at the time of the signing of the 2008 Note. On 29 March 2010, the trial court entered an order affirming the findings of fact made by the Clerk of Court and authorizing the Substitute Trustee to proceed with foreclosure under the terms of the Deed of Trust. Respondent-appellant appeals.

## II. Standard of Review

N.C. Gen. Stat. § 45-21.16 (2009) provides that a mortgagee who seeks to exercise a power of sale under a deed of trust may do so only upon proper notice to all interested parties and only after a hearing before the clerk of superior court. *Id.* Any party may appeal from the clerk's findings to the superior court. N.C. Gen. Stat. § 45-21.16(d1). The superior court, like the clerk of court, is limited in its review to determination of four factual issues set out in N.C. Gen. Stat. § 45-21.16(d):

[T]he trial court in the appeal of a foreclosure action is to conduct a *de novo* hearing to determine the same four issues determined by the clerk of court: (1) the existence of a valid debt of which the party seeking foreclosure is the holder, (2) the existence of default, (3) the trustee's right to foreclose under the instrument,

and (4) the sufficiency of notice of hearing to the record owners of the property.

*In re Foreclosure of Azalea Garden Bd. & Care, Inc.*, 140 N.C. App. 45, 49-50, 535 S.E.2d 388, 392 (2000) (citing *In re Foreclosure of Goforth Properties, Inc.*, 334 N.C. 369, 374, 432 S.E.2d 855, 858 (1993)). "The applicable standard of review on appeal where . . . the trial court sits without a jury, is whether competent evidence exists to support the trial court's findings of fact and whether the conclusions reached were proper in light of the findings." *Id.* at 50, 535 S.E.2d at 392 (citing *Walker v. First Federal Savings and Loan*, 93 N.C. App. 528, 532, 378 S.E.2d 583, 585, *disc. review denied*, 325 N.C. 320, 381 S.E.2d 791 (1989)).

## III. Discussion

Respondent-appellant assigns error to the trial court's findings of fact that the 2008 Note is secured by the Deed of Trust and that such Deed of Trust secures the 2008 Note pursuant to the terms of the Hypothecation Agreement. Respondent-appellant contends that neither the terms of the Hypothecation Agreement nor the provisions of the Deed of Trust extend her property as collateral to secure the debt incurred under the 2008 Note. We agree.

To be a valid lien on real property, North Carolina law requires a deed of trust to specifically identify the obligation it secures. *Putnam v. Ferguson*, 130 N.C. App. 95, 98, 502 S.E.2d 386, 388 (1998); *In re Foreclosure of Enderle*, 110 N.C. App. 773, 775, 431 S.E.2d 549, 550 (1993); *see also In re Head Grading Co., Inc.*, 353 B.R. 122, 123 (Bankr. E.D.N.C. 2006) ("North Carolina law requires deeds of trust to specifically identify the debt referenced therein."). In the present case, the Deed of Trust very specifically describes the obligation secured as including:

> [A] Promissory Note, issued by [the Bank] dated February 15th, 2007 in the face amount of $150,000 and modified and reduced to $80,000 on July 26th, 2007 *and an Irrevocable Letter of Credit issued by [the Bank] dated April 19th, 2007 in the aggregate face amount of up to $550,000*, and a Back up Line of Credit Facility dated April 19th, 2007 in the face amount of up to $500,000 executed by Matthew F. Hall President as [sic] Outer Banks Construction Co[.] Incorporated . . . .

(Emphasis added.) Therefore, the Deed of Trust explicitly secures the 2007 Note.

In addition, our Supreme Court has held that a deed of trust executed as security for a debt will secure all renewals of the debt unless a different intent appears. *Wachovia Nat'l Bank v. Ireland*, 122 N.C. 571, 574, 29 S.E. 835, 835 (1898) ("The deed contains a covenant that the charge shall be binding for all renewals of the debts specified. This would be so without any agreement, unless a different intent appeared."). Although more than a hundred years old, this holding has never been overturned and still serves as controlling precedent in North Carolina today. *See In re Blevins*, 255 B.R. 680, 684 (W.D.N.C. 2000) ("ffirming Bankruptcy Court's holding that, under North Carolina contract law, a promissory note executed as a renewal does not cancel the original promissory note or the deed of trust securing the debt incurred under the original promissory note). Our Supreme Court has further held, "Where a note is given merely in renewal of another note and not in payment thereof, the effect is to extend the time for the payment of the debt without extinguishing or changing the character of the obligation[.]" *Dyer v. Bray*, 208 N.C. 248, 248, 180 S.E. 83, 83 (1935). Accordingly, a promissory note executed as a renewal only operates as an extension of time for payment and will continue to be secured by a deed of trust that secures the original debt, unless a contrary intent appears.

In the present case, respondent-appellant disputes that the 2008 Note, in addition to the 2007 Note, is secured by the Deed of Trust. The face of the 2008 Note specifically states that it is a "renewal of" loan number "65257145." This loan number is the loan number of the 2007 Note. Therefore, the documents indicate the fact that the 2008 Note was issued as a renewal of the 2007 Note, and because a renewal note is not intended to extinguish the original obligation, the Deed of Trust that encompasses the original 2007 Note also secures the new 2008 Note, unless a contrary intent appears. The Bank maintains that the Deed of Trust "evinces the intent" that the Deed of Trust secures the 2008 Note based simply on the fact that the 2008 Note is a renewal of the 2007 Note. However, counter to the Bank's assertion, the terms of the Deed of Trust do in fact reflect the contrary intent that the debts incurred under the 2008 Note are not secured under the Deed of Trust.

On the face of the Deed of Trust appears the following future advances clause:

This Deed of Trust is given to secure all present and future advances made or to be made pursuant to the terms of the oblig-

ation. The amount of the present obligation secured hereunder is $00.00 (zero) and the maximum amount of present and future obligations which may be secured at any one time is $350,000.00 (three hundred and fifty thousand dollars). *The period within which any and all future advances are to be made and secured hereunder is the period between the date hereof and April 18th, 2008.* This Deed of Trust is made pursuant to Article 7 of Chapter 45 of the North Carolina General Statutes.

(Emphasis added.) Article 7 of Chapter 45 of the North Carolina General Statutes addresses "Instruments to Secure Future Advances and Future Obligations." N.C. Gen. Stat. §§ 45-67 through –79 (2009). The future advances clause in the Deed of Trust is consistent with the provisions of N.C. Gen. Stat. § 45-68(1) (2007) ("mended 2009) in effect at the time the Deed of Trust was executed, which instructs that a security instrument, including a deed of trust, shall secure future advances and future obligations so as to give priority so long as certain criteria are stated in the security instrument. *Id.* Notably, one term that must be stated in a deed of trust is: "The period within which future obligations may be incurred, which period shall not extend more than 15 years beyond the date of the security instrument . . . ." *Id.* Therefore, in anticipation of any extensions or renewals, the Bank could have secured priority for future advances or future obligations for up to fifteen years pursuant to the terms of the statute in effect at that time. However, the Deed of Trust expressly limits the time period for which future advances "are to be made and secured hereunder" to the period expiring on 18 April 2008. As such, the Deed of Trust evinces the intent to limit the extent to which the Deed of Trust secures future advances to only those made prior to 18 April 2008.

Furthermore, our courts adhere to the central principle of contract interpretation that " '[t]he various terms of the [contract] are to be harmoniously construed, and if possible, every word and every provision is to be given effect.' " *Duke Energy Corp. v. Malcolm,* 178 N.C. App. 62, 65, 630 S.E.2d 693, 695 (2006) (quoting *Gaston County Dyeing Machine Co. v. Northfield Ins. Co.,* 351 N.C. 293, 299-300, 524 S.E.2d 558, 563 (2000)); *see also In re Den-Mark Const., Inc.,* 398 B.R. 842, 850 (Bankr. E.D.N.C. 2008) ("Contract interpretation in North Carolina must favor an interpretation of a contract that gives meaning to every clause over an interpretation that does not."). "It is a well-settled principle of legal construction that it must be presumed the parties intended what the language used clearly expresses, and the contract must be construed to mean what on its face it purports to

mean." *Self-Help Ventures Fund v. Custom Finish*, —— N.C. App. ——, ——, 682 S.E.2d 746, 749 (2009) (internal quotation marks and citations omitted). "Moreover, all contemporaneously executed written instruments between the parties, relating to the subject matter of the contract, are to be construed together in determining what was undertaken." *Id.* (internal quotation marks and citation omitted). "Thus, where a note and a deed of trust are executed simultaneously and each contains references to the other, the documents are to be considered as one instrument and are to be read and construed as such to determine the intent of the parties." *In re Foreclosure of Sutton Investments*, 46 N.C. App. 654, 659, 266 S.E.2d 686, 689 (1980).

In the present case, respondent-appellant executed two documents contemporaneously on 2 October 2007: the Deed of Trust and the Hypothecation Agreement. Respondent-appellant contends that the trial court erred in finding that the Deed of Trust secures the 2008 Note pursuant to the terms of the Hypothecation Agreement. Respondent-appellant argues that in construing the Deed of Trust and the Hypothecation Agreement together, the intent of the parties was to limit the period in which advances could be made and secured under the Deed of Trust. We find respondent-appellant's argument particularly persuasive under the facts of this case.

The primary purpose of the Hypothecation Agreement signed by respondent-appellant on 2 October 2007 is to:

> [A]uthorize[] Matthew Hall President Outer Banks Construction Co. Inc. (Debtor) to hypothecate, pledge and/or deliver to [the Bank] . . . property (Collateral) described below belonging to the undersigned [Eloise Hall], and the undersigned agrees that when so hypothecated, pledged and/or delivered said Collateral shall be collateral to secure any present or future indebtedness, obligation or liability howsoever evidenced, owing by Debtor to [the Bank], or any extension, modification or renewal thereof, the undersigned hereby consenting to the extension or renewal . . . and waiving any notice of any such extension, modification or renewal.

The language of the Hypothecation Agreement thereby authorized OBC to pledge the property of respondent-appellant for any present or future obligations to the Bank, including any extensions or renewals of those obligations. The future advances provision in the Deed of Trust, on the other hand, made no provision for extensions

or renewals of the specified obligations and expressly limited both the amount that the Deed of Trust would secure, as well as the period within which advances could be made and secured. Further, the Deed of Trust expressly stated the final date for payment of the obligation secured thereunder was 18 April 2008, the same maturity date reflected on the 2007 Note. Construed together, the instruments reveal that respondent-appellant provided OBC with the authority to pledge her property as security for any renewals or extensions on the obligations, but limited the initial time period during which any advances would be secured by that property to the period ending 18 April 2008.

Respondent-appellant cites *McNeary's Arborists v. Carley Capital Group*, 103 N.C. App. 650, 406 S.E.2d 644 (1991) in support of her contention that the future advances time limitation stated in the Deed of Trust must control. In *McNeary's Arborists*, the deed of trust at issue explicitly stated that "the period within which future obligations may be incurred hereunder expires March 3, 1988." *Id.* at 651, 406 S.E.2d at 645. Subsequently, on 10 June 1988, the parties modified the terms of the deed of trust to extend the time period within which future advances may be made. *Id.* However, this Court found that any obligations incurred in the interim period between 3 March and 10 June 1988 did not have seniority over an intervening mechanic's lien filed against the subject property pledged as collateral under the deed of trust. This Court held: "Under the explicit terms of [the lender's] deed of trust, the period within which Carley's future obligations could be incurred expired on 3 March 1988." *Id.* at 652, 406 S.E.2d at 645. Accordingly, we agree with respondent-appellant's contention that the express time limitation for future advances contained in the terms of the Deed of Trust controls and evinces the intent of the parties that the property of respondent-appellant pledged as collateral was meant to secure only those advances made prior to 18 April 2008.

Alternatively, the Bank contends that, because the 2008 Note is a renewal of the 2007 Note, any advances made under the 2008 Note should not be considered an advance made after the expiration of the future advances period, but rather should be considered as the original debt. The only case applying North Carolina law on which the Bank relies for its contention is *In re Blevins*, 255 B.R. 680 (W.D.N.C. 2000). In *Blevins*, the debtors both applied for *and received* two loans from the lender in December 1992. *Id.* at 682. Both loans were secured by deeds of trust pledging certain real property of the debtor as collateral. *Id.* The original promissory notes specifically provided that the

debtor would continue to be obligated to pay the loans, "even if the loans were renewed or extended." *Id.* When the 1992 Notes became due one year later, the debtor was unable or unwilling to pay the amounts owed on the notes at that time, and instead of foreclosing on the notes, the lender allowed the debtor to extend the loans for an additional year pursuant to a renewal note. *Id.* at 682-83. Therefore, the debtor executed renewal promissory notes on the 1992 Notes in 1993, 1994, and 1995. *Id.* at 683. The bankruptcy court, applying North Carolina contract law, held that the renewal notes executed by the debtor in 1993, 1994, and 1995 "were merely extensions of the 1992 Promissory Notes and therefore did not cancel the 1992 Notes or the 1992 Deeds of Trust executed by the Debtor." *Id.* at 684.

Unlike the facts in *Blevins*, in the present case no amounts were owed at the time of the original maturity date of the 2007 Note, which was 18 April 2008. The renewal notes in *Blevins* extended the time for payment on amounts already advanced and owed under the original note for which the deed of trust was executed. However, in the present case, the 2008 Note, despite being labeled a "renewal" of the 2007 Note, was not an extension of time for payment, as no debt was owed under the original 2007 Note which the Deed of Trust secured. Had the amounts been advanced under the original 2007 Note and renewed under the 2008 Note, as in *Blevins*, then the advances would have been made prior to the 18 April 2008 expiration date and would have been secured by the Deed of Trust. Such is not the case here.

Additionally, the North Carolina Supreme Court case of *Ireland*, 122 N.C. 571, 29 S.E. 835, which established the rule regarding renewals on which the Bank relies, is also distinguishable from the facts of the present case. In *Ireland*, the deed of trust at issue contained an express covenant that the property pledged as collateral "shall be binding for all renewals of the debts specified." *Id.* at 574, 29 S.E. at 835. However, in the present case, the Deed of Trust made no covenants for renewals. Rather, the Deed of Trust expressed a clear intent to limit the initial period for which the collateral would be pledged as security to cover advances made before 18 April 2008.

Lastly, this result is compelled by the "well[-]settled" principle "that a power of sale contained in a deed of trust must be exercised in strict conformity with the terms of the instrument." *Sutton Investments*, 46 N.C. App. at 659, 266 S.E.2d at 688. If the language in a separate instrument is contradictory, "language in a deed of trust expressly limiting the exercise will govern." *Id.* at 659, 266 S.E.2d at 689.

In the present case, the Deed of Trust expressly limits the collateral pledged as security for only those advances made prior to 18 April 2008. The facts before the trial court unequivocally established that all advances made to OBC were under the 2008 Note and were made after the 18 April 2008 date. Despite signing a new promissory note, the Bank overlooked the term limit under the Deed of Trust securing its future advances. As between the two parties, the responsibility of ensuring that future advances are adequately secured falls on the Bank. The Bank failed to execute a modification of the time period for which future advances would be secured under the Deed of Trust, despite both its ability to extend the term pursuant to N.C. Gen. Stat. § 45-68 and OBC's authority to pledge the collateral for such a modification, extension, or renewal pursuant to the Hypothecation Agreement. As such, the Deed of Trust expired on 18 April 2008, since no sums were advanced prior to that date, and all advances made after that express date pursuant to the 2008 Note were no longer secured under the Deed of Trust. Thus, the trial court erred in finding that the Deed of Trust secures the debt evidenced by the 2008 Note either by its terms or pursuant to the terms and provisions of the Hypothecation Agreement. Consequently, the trial court erred in finding that OBC is in default under the Deed of Trust and that the Substitute Trustee thereby has the authority to foreclose on respondent-appellant's property under the Deed of Trust's power of sale provision.

## IV. Conclusion

We hold the trial court erred in its findings of fact that the debt owed by OBC to the Bank as evidenced by the 2008 Note is secured by the Deed of Trust pursuant to the terms of the Hypothecation Agreement and that OBC is in default under the Deed of Trust. Because these findings are not supported by competent evidence, the trial court erred in its conclusion that the Substitute Trustee is entitled to foreclose on respondent- appellant's property pursuant to the power of sale under the terms of the Deed of Trust. Accordingly, the order of the trial court authorizing the Substitute Trustee to proceed with foreclosure under the power of sale contained in the Deed of Trust must be reversed.

Reversed.

Judges GEER and STEPHENS concur.